# EXHIBIT 1

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. James B. Clark, III |
| v. | : | Mag. No. 19-3377 |
| BRENDA SMITH | : | CRIMINAL COMPLAINT |
| | : | **FILED UNDER SEAL** |

I, Jason Annuziato, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

**SEE ATTACHMENT A**

I further state that I am a Special Agent with the U.S. Attorney's Office for the District of New Jersey, and that this complaint is based on the following facts:

**SEE ATTACHMENT B**

continued on the attached pages and made a part hereof.

_____
Jason Annuziato, Special Agent
U.S. Attorney's Office
District of New Jersey

Sworn to before me and subscribed in my presence,
August 22, 2019, at Newark, New Jersey

_____
HONORABLE JAMES B. CLARK, III
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

## Counts 1 through 4
### (Wire Fraud)

From at least as early as in or around February 2016 through in or around August 2019, in the District of New Jersey and elsewhere, defendant

## BRENDA SMITH

knowingly and intentionally devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing and attempting to execute such scheme and artifice, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, the following writings, signs, signals, pictures, and sounds, each constituting a separate count of this Complaint.

| Count | Approximate Date | Description |
|---|---|---|
| 1 | December 26, 2018 | Interstate wire related to wire transfer of $2,049,000 fraudulently obtained from Victim 1 |
| 2 | December 27, 2018 | Interstate wire related to wire transfer of $236,000 fraudulently obtained from Victim 1 |
| 3 | January 29, 2019 | Interstate wire related to wire transfer of $2,000,000 fraudulently obtained from Victim 1 |
| 4 | January 31, 2019 | Interstate wire related to wire transfer of $225,000 fraudulently obtained from Victim 1 |

In violation of Title 18, United States Code, Section 1343 and Title 18, United States Code, Section 2.

### Count 5
### (Securities Fraud)

From at least as early as in or around February 2016 through in or around August 2019, in the District of New Jersey and elsewhere,

### BRENDA SMITH

by use of the means and instrumentalities of interstate commerce, the mails, and facilities of national securities exchanges, directly and indirectly, knowingly and willfully used manipulative and deceptive devices and contrivances in contravention of Title 17, Code of Federal Regulations, Section 240.10b-5 in connection with the purchases and sales of securities, to wit, interests in Broad Reach Capital, LP, by (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, namely, persons with interests in Broad Reach Capital, LP.

In violation of Title 15, United States Code, Sections 78j(b) and 78ff, Title 17, Code of Federal Regulations, Section 240.10b-5, and Title 18, United States Code, Section 2.

## ATTACHMENT B

     I, Jason Annuziato, am a Special Agent with the U.S. Attorney's Office, District of New Jersey. I have conducted an investigation and discussed this matter with other law enforcement officers who have participated in this investigation and have knowledge of the following facts. Because this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts which I believe are necessary to establish probable cause. All dates and dollar amounts described in this affidavit are approximate and all conversations and statements described in this affidavit are related in substance and in part.

     1.    At all times relevant to this Complaint:

     a.    Defendant BRENDA SMITH was a resident of Philadelphia, Pennsylvania. SMITH managed or controlled purported investment funds, including Broad Reach Capital, LP ("Broad Reach Capital"). The general partner of Broad Reach Capital was Broad Reach Partners, LLC, and Broad Reach Capital was managed by Bristol Advisors, LLC. Both Broad Reach Partners, LLC and Bristol Advisors, LLC were owned and controlled by SMITH.

     b.    Broad Reach Capital was a pooled investment fund/hedge fund that was established in or around February 2016. Broad Reach Capital was open to accredited investors with a minimum investment of $1 million.

     c.    "Victim 1" was a limited partnership investment fund with a principal place of business in Montreal, Canada. Victim 1 was an investor and Limited Partner in Broad Reach Capital.

     d.    "Victim 2" was an individual residing in Puerto Rico. Victim 2 controlled investment funds that were investors and Limited Partners in Broad Reach Capital.

     e.    "Victim 3" was an individual residing in Florida. Victim 3 controlled a trust that was an investor and Limited Partner in Broad Reach Capital.

     f.    "Victim 4" was an individual residing in New York. Victim 4 was an investor and Limited Partner in Broad Reach Capital.

     g.    "Victim 5" was an individual residing in Pennsylvania. Victim 5 was an investor and Limited Partner in Broad Reach Capital.

## Overview

2.  From at least as early as in or about February 2016 through in or about August 2019, SMITH orchestrated a fraudulent scheme pursuant to which she made misrepresentations to investors and promised that she would invest their funds in particular trading strategies that Broad Reach Capital was allegedly optimally situated to execute (the "Trading Strategies"). As part of the fraudulent scheme, SMITH collected more than approximately $100 million in investments into Broad Reach Capital. Instead of investing the money as she promised, she diverted millions of dollars of investor funds out of Broad Reach Capital for purposes inconsistent with the Trading Strategies and, in some instances, paid out millions of dollars to other investors. When confronted with redemption requests by several large investors in Broad Reach Capital, SMITH failed to honor the redemption requests and misstated and omitted material facts.

## SMITH Defrauds Victim 1

3.  In or about August 2018, Victim 1 reached out to SMITH to explore investing in Broad Reach Capital. Over the course of several months, SMITH communicated with Victim 1 regarding a potential investment, during which SMITH made misrepresentations to induce Victim 1 to invest in Broad Reach Capital. In addition, SMITH provided written materials to Victim 1 that contained misrepresentations.

4.  For instance, SMITH represented to Victim 1 that Broad Reach Capital was a trade-focused investment fund that employed the Trading Strategies, which included three core strategies: dividend capture, VIX convergence, and opportunistic trading.

5.  SMITH provided written materials, including a "tear sheet" (a one-page summary sheet about Broad Reach Capital), to Victim 1 that mentioned only the Trading Strategies as investments and that contained purported historical performance information. The "tear sheet" included a chart that reflected, among other things, positive monthly returns and claimed annual returns of over 35% in 2016 and over 33% in 2017. According to the chart, 2018 had steady positive monthly returns, including a 1.76% return in February 2018. In reality, however, Broad Reach Capital's brokerage accounts lost over approximately 50% of their value in February 2018.

6.  Moreover, in direct conflict with the brokerage account records, SMITH told Victim 1 that a Broad Reach Capital trader avoided a February 2018 volatility shock and made a huge profit.

7.  SMITH also told Victim 1 that the amount of assets in Broad Reach Capital were tens of millions of dollars higher than they actually were and misrepresented the daily trading volume of the fund.

8. Based on these misrepresentations and others, as well as SMITH's explanation of the Trading Strategies, Victim 1 invested $4,510,000.

9. SMITH did not invest Victim 1's money in the Trading Strategies. Instead, as detailed below, SMITH transferred Victim 1's money to non-Broad Reach Capital bank accounts that SMITH controlled and paid other investors with Victim 1's money.

10. Another Broad Reach Capital investor ("Victim 2") ultimately transferred tens of millions of dollars of its investments in Broach Reach Capital to Victim 1. Victim 1 eventually made a redemption request for more than $46 million, including Victim 1's original investments plus the transferred investments from Victim 2. SMITH failed to pay any portion of the redemption request.

**SMITH Misappropriates Victim 1's December 2018 Investment**

11. On or about December 26, 2018, Victim 1 wired $2,049,000 to Broad Reach Capital to invest in the Trading Strategies. On or about December 27, 2018, Victim 1 wired $236,000 to Broad Reach Capital to invest in the Trading Strategies. Both wire transfers were processed through the Fedwire Funds Service and involved electronic communications between Federal Reserve Bank facilities in New Jersey and Texas.

12. Prior to the deposits from Victim 1, the balance in the Broad Reach Capital bank account was $948.82.

13. Two business days later, on or about December 31, 2018, SMITH transferred $1,030,000 from the Broad Reach Capital bank account through two bank accounts that she controlled, ultimately wiring $1,029,150.68 to another investor and Limited Partner of Broad Reach Capital.

14. Also on or about December 31, 2018, SMITH wired $1,000,000 from the Broad Reach Capital bank account to a commercial real estate company.

15. The vast majority of Victim 1's December 2018 investment was not traded as promised. Out of the $2,285,000 wired to Broad Reach Capital, at most approximately $32,000 was transferred to a brokerage account.

**SMITH Misappropriates Victim 1's January 2019 Investment**

16. On or about November 29, 2018, an investor and Limited Partner of Broad Reach Capital ("Victim 3") requested redemption in the amount of $2,364,513 from SMITH.

17. As of on or about January 28, 2019, the balance in the Broad Reach Capital bank account was $73.92.

6

18. On or about January 29, 2019, Victim 1 wired $2,000,000 to Broad Reach Capital to invest in the Trading Strategies. This wire transfer was processed through the Fedwire Funds Service and involved electronic communications between Federal Reserve Bank facilities in New Jersey and Texas.

19. On that same day, SMITH wired $2,000,000 to Victim 3.

20. On or about January 31, 2019, Victim 1 wired $225,000 to Broad Reach Capital to invest in the Trading Strategies. This wire transfer was processed through the Fedwire Funds Service and involved electronic communications between Federal Reserve Bank facilities in New Jersey and Texas.

21. Between on or about January 29, 2019 through on or about January 31, 2019, an additional $130,000 was deposited into the Broad Reach Capital bank account from at least two other investors and Limited Partners of Broad Reach Capital ("Victim 4" and "Victim 5").

22. On or about January 31, 2019, SMITH transferred $6,000 and $3,500 from an account she controlled into the Broad Reach Capital bank account. These funds, when added to the funds from Victim 1, Victim 4, and Victim 5, totaled $364,500.

23. That same day, on or about January 31, 2019, SMITH wired $364,513 to Victim 3—the remaining amount of Victim 3's requested redemption.

24. In short, none of Victim 1's January 2019 investment was transferred to a Broad Reach Capital brokerage account or otherwise traded. The entirety of Victim 1's funds were instead provided to Victim 3.

### **SMITH Fails to Pay Victim 1's Redemption Request**

25. Victim 1 ultimately requested the redemption of its investment. SMITH repeatedly failed to pay the redemption and misstated and omitted material facts. SMITH eventually provided a Broad Reach Capital asset list to Victim 1, showing purported assets that were in direct conflict with her representations to investors that Broad Reach Capital employed the Trading Strategies.

26. On or about March 22, 2019, Victim 1 requested that SMITH redeem 100% of Victim 1's capital account with Broad Reach Capital. As stated above, in addition to the December 2018 and January 2019 investments that Victim 1 sent to Broad Reach Capital, in or around February 2019, Victim 2 transferred tens of millions of dollars of investments in Broad Reach Capital to Victim 1.

7

27. On or about April 30, 2019, Broad Reach Capital closed Victim 1's capital account. Victim 1's Broad Reach Capital account statement showed that $46,598,676.84 was withdrawn in April 2019, and that as of April 30, 2019, the account had a $0 balance.

28. SMITH told Victim 1 that the wire for the full redemption amount of $46,598,676.84 (the "Redemption Amount") would be sent on May 15, 2019.

29. In the days and weeks following the promised redemption date of on or about May 15, 2019, SMITH misstated and omitted material facts while providing a series of shifting excuses and explanations for the lack of redemption.

30. For example, SMITH told Victim 1 that Broad Reach Capital had invested in long dated option contracts and that liquidating those options to fund the redemption would require her to "take a haircut."

31. On or about May 31, 2019, SMITH provided Victim 1 with a corporate resolution of CV International Investments Limited, an entity SMITH controls and manages ("CV International"), as proof of funds. The resolution stated that CV International owned medium term notes issued by HSBC Holding PLC with a particular ISIN number (the "HSBC Bond") and that it had transferred $100 million of the HSBC Bond notes to Broad Reach Capital, effective as of December 31, 2017.

32. SMITH told Victim 1 that she anticipated being able to transmit the funds during the month of June 2019 and would continue to work on increasing liquidity of the HSBC Bond.

33. SMITH provided Victim 1 with a purported investment statement from HSBC in the name of CV International. The purported investment statement listed the HSBC Bond and showed a balance and "investment value" of $2.5 billion.

34. A search of public records showed that the HSBC Bond did indeed exist and was issued by HSBC Holdings PLC. The face value of the bond was $2.5 billion. However, records show over approximately 300 holders of the bond—mostly large institutional investors or funds. SMITH, CV International, and Broad Reach Capital were not on the list of holders of the HSBC Bond—and none was the sole holder of the entirety of the HSBC Bond. Indeed, the bond was actively trading.

35. On or about June 14, 2019, SMITH told Victim 1 that she was going to London early the next week to monetize the HSBC Bond. SMITH stated that she should have liquidity once the instrument was in the London bank as opposed to the Hong Kong bank, which was causing issues with certain transactions because of the time zone difference. SMITH also asked Victim 1 to

8

keep the fact that she was the owner of the HSBC Bond confidential "for [her] safety."

36. When Victim 1 asked SMITH why records showed that the HSBC Bond was not owned by Broad Reach Capital or CV International, SMITH responded that she was told that HSBC would either issue additional units when she closed or repurchase units, but it was HSBC's choice.

37. On or about June 17, 2019, SMITH told Victim 1 that she was working directly with a monetizer overseas on several transactions. She stated that her banker had just informed her of two deliverables in the next 24 hours.

38. Two days later, on or about June 19, 2019, SMITH told Victim 1 that she was waiting for an email from a banker that was promised that day. She said that goal for the funds and audit was the end of the month, but if the funds came in sooner, she would wire them the same day.

39. On or about July 3, 2019, Victim 1 received a one-page typed document entitled "Broad Reach Capital LP, Listing of Assets, Valued as of June 30, 2019" (the "Broad Reach Capital Asset List"). According to the Broad Reach Capital Asset List, Broad Reach Capital's total asset value was over $180 million. The vast majority of Broad Reach Capital's assets—over $129 million—were purportedly in the HSBC Bond. This amount was inconsistent with the earlier corporate resolution provided by SMITH and with the publically available records regarding the HSBC Bond.

40. The other major assets on the Broad Reach Capital Asset List included over $20 million in "Securitized cryptocurrency" and $12 million in "notes receivable." Neither of these assets were securities that were part of the Trading Strategies. The Broad Reach Capital Asset List showed only approximately $2.6 million in brokerage accounts—a small fraction of what SMITH claimed where the assets of Broad Reach Capital.

41. As of August 22, 2019, Victim 1 had not received any portion of the $46,598,676.84 Redemption Amount.