# EXHIBIT 8

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **KEVIN DOOLEY KENT, in his capacity** | : | |
| **As Receiver for Broad Reach Capital, LP,** | : | |
| **Broad Reach Partners, LLC, Bristol** | : | |
| **Advisors, LLC, Investment Consulting** | : | **Civil Action** |
| **LLC and CV Investments LLC** | : | |
| **1500 Market Street, Centre Square** | : | **NO. _____** |
| **West Tower, Suite 3900** | : | |
| **Philadelphia, PA 19102-2100,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **JORDAN DENISE a/k/a DENISE** | : | |
| **JORDAN** | : | |
| **5000 Birch Street, Suite 3000** | : | |
| **Newport Beach, CA 92660** | : | |
| **AND** | : | |
| **ENTERCORE, INC.** | : | |
| **c/o First Step, LLC** | : | |
| **1040 Partridge Place, Suite 3** | : | |
| **Helena, Montana 59602** | : | |
| **AND** | : | |
| **ORANGE SPLENDOR, INC.** | : | |
| **c/o First Step, LLC** | : | |
| **1040 Partridge Place, Suite 3** | : | |
| **Helena, Montana 59602** | : | |
| | : | |
| **Defendants.** | : | |

## COMPLAINT

1

# INTRODUCTION

1.       This action is brought pursuant to a June 29, 2020 Order (the "Receivership Order") issued by the Honorable Madeline Cox Arleo, United States District Judge for the District of New Jersey, in the underlying action brought by the Securities and Exchange Commission ("SEC" or the "Commission") against Brenda Smith ("Smith"); Broad Reach Capital, LP ("Broad Reach Capital", "Broad Reach Fund" or the "Fund"); Broad Reach Partners, LLC ("Broad Reach Partners"); and Bristol Advisors, LLC ("Bristol") (collectively, the "Smith Defendants"), captioned *Securities and Exchange Commission v. Brenda Smith*, *et al.*, Civil Action No. 2:19-cv-17213 (MCA) (D.N.J.) (the "SEC Action"). True and correct copies of the SEC Complaint and the Receivership Order are attached hereto as Exhibit "A" and Exhibit "B," respectively.

2.       The SEC Action arises out of an investment advisory fraud in which, *inter alia*, the Smith Defendants solicited approximately $100 million from investors for purported investment in sophisticated securities trading strategies. In reality, Smith took the vast majority of these funds for unrelated companies, to pay back other investors, and for personal use. And, in 2019, confronted with at least one investor trying to redeem its investment, Smith created a fictitious valuation of assets backed by false claims that she held billions of dollars in assets through a company she owned.

2

3.     The fraud was perpetrated by Smith Defendants directly and through numerous affiliated entities owned or controlled by one or more of the Smith Defendants (referred to in the Receivership Order as "Affiliated Entities").

4.     The Smith Defendants and Affiliated Entities operated out of offices in West Conshohocken, Pennsylvania, and, upon information and belief, all or a majority of their conduct as set forth in this Complaint occurred in the Commonwealth of Pennsylvania.

5.     Smith is also being criminally prosecuted for her conduct. The government filed its criminal complaint against Smith on August 22, 2019 in the matter of *USA v. Smith*, No. 2:20-cr-00475-MCA-1 (D.N.J.) (the "Criminal Action"). On September 9, 2021, Smith pled guilty to Count Seven of the Criminal Indictment, which charged her with securities fraud. Smith is scheduled to be sentenced on March 28, 2022.

6.     The SEC Action is ongoing, but currently subject to a stay pending the completion of the Criminal Action. Under the terms of the stay order, all orders relating to the Receivership and all powers granted to the Receiver remain in full force and effect during the pendency of the stay.

7.     Plaintiff, Kevin Dooley Kent, was appointed under the Receivership Order to serve as the Receiver ("Receiver" or "Plaintiff") for the purpose of marshaling and preserving all assets, including, *inter alia*, monies, securities,

choses in action, and properties of the Smith Defendants and the Affiliated Entities to maximize the recovery available to investors defrauded by Smith. This includes assets that (1) are attributable to assets derived from investors or clients of Smith Defendants; (2) are held in constructive trust for the Smith Defendants; (3) were fraudulently transferred by the Smith Defendants; and/or (4) may otherwise be included as assets of the Smith Defendants or Affiliated Entities (collectively "the Receivership Estate" or "Receivership Assets"). *See* Ex. "B", Whereas ¶ 3.

8.      In this regard, the Receivership Order provides that "Kevin D. Kent, Esq., of the firm Conrad O'Brien, is hereby appointed to serve without bond as receiver . . . to assume control of, marshal, pursue, and preserve the Receivership Assets." *See* Ex. "B", ¶ 5.

9.      In the Receivership Order, the Court took exclusive jurisdiction and possession of the Receivership Assets, including, but not limited to, the assets of the following Smith Defendants and Affiliated Entities: Broad Reach Capital, LP; Broad Reach Partners, LLC; Bristol Advisors, LLC; BA Smith & Associates LLC; Bristol Advisors LP; CV Brokerage, Inc.; Clearview Distribution Services LLC; CV International Investments Limited; CV International Investments PLC; CV Investments LLC; CV Lending LLC; CV Minerals LLC; BD of Louisiana, LLC; TA 1, LLC; FFCC Ventures, LLC; Prico Market LLC; GovAdv Funding LLC; Elm Street Investments, LLC; Investment Consulting LLC ("Investment

4

Consulting") and Tempo Resources LLC (collectively, "Receivership Parties" or "Receivership Entities"). *See* Ex. "B", ¶ 1.

10.     Plaintiff, Kevin Dooley Kent, in his capacity as Receiver for, *inter alia*, the Receivership Assets and Receivership Parties, by and through his counsel, hereby asserts this action to recover, and avoid the fraudulent transfer(s) of, Receivership Assets made by certain of the Receivership Parties to and/or on behalf of the Defendant, under theories of fraudulent transfer and unjust enrichment. The Receiver also demands an accounting from Defendants, including but not limited to all funds transferred by the Receivership Parties to them, for their benefit, on their behalf, or at their request, in whatever form.

## **PARTIES**

11.     Under the Receivership Order, Receiver is a representative of this Court with the full powers of an equity receiver. *See* Ex. "B".

12.     The Receivership Order authorizes the Receiver to institute legal proceedings on behalf of and for the benefit of the Receivership Estate as may be necessary or appropriate in order to recover, conserve or maximize Receivership Assets, including, *inter alia,* actions seeking legal and equitable relief, to avoid fraudulent transfers, to collect debts, for disgorgement of profits, for creation of a constructive trust, for asset turnover, for rescission and restitution, and such other

relief as this Court may deem necessary to enforce the Receivership Order. *See* Ex. "B", ¶¶ 50-51.

13.     Defendant, Jordan Denise a/k/a Denise Jordan ("Denise") is an individual whose last known business address is 5000 Birch Street, Suite 3000, Newport Beach, California, 92660. Upon information and belief, Denise is the sole and/or controlling owner, manager, founder, director and/or member, and is essentially the alter-ego, of the other defendants named herein, and personally engaged in the conduct of Defendants as alleged in this Complaint.

14.     Defendant, Entercore, Inc. ("Entercore"), is a legal entity incorporated in the State of Montana with a registered agent address of First Step, LLC, 1040 Partridge Place, Suite 3, Helena, MT 59602 and a principal address of 5000 Birch Street, Suite 3000, Newport Beach, California, 92660.

15.     Defendant, Orange Splendor, Inc. ("Orange Splendor"), is a legal entity incorporated in the State of Montana with a registered agent address of First Step, LLC, 1040 Partridge Place, Suite 3, Helena, MT 59602 and a principal address of 5000 Birch Street, Suite 3000, Newport Beach, California, 92660. Upon information and belief, Orange Splendor was involuntarily dissolved on or about December 1, 2019.

16.     On August 31, 2021, Receiver was granted permission to file this lawsuit in the SEC Action (ECF No. 117).

## JURISDICTION AND VENUE

17.     Federal courts have jurisdiction over all suits in equity and actions at law brought to enforce any liability or duty created by the federal securities laws pursuant to 15 U.S.C. §§ 77v(a) and 78aa, laws at issue in the SEC Action.

18.     This Court has supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1367, as Receiver brings this action to accomplish the objectives of the Receivership Order entered in the SEC Action, and as such this action forms part of the same case or controversy as the SEC Action.

19.     Under the Receivership Order, this Court retains exclusive jurisdiction over and possession of the Receivership Assets.

20.     This Court also has jurisdiction over this action under 28 U.S.C. §§ 754 and 1692. Receiver has filed copies of the Receivership Order with the United States District Court in each federal judicial district, including the District of Montana and the Central, Eastern, Northern and Southern Districts of California. As a result of those filings, the Receiver is vested with complete control over any real or personal property of the Receivership Estate located in any federal judicial district, including in Montana and California, with the right to take possession of such property.

21. Venue is proper in this Court under 28 U.S.C. §§ 754, 1391(b), and 1692.

# FACTUAL BACKGROUND

## The Fraudulent Scheme

22.    The SEC Action arises out of an investment advisory fraud that Smith Defendants operated from at least February 2016 through 2019, in connection with which Smith Defendants offered investors limited partnership interests in the Fund.

23.    Since the Fund's inception, Smith raised approximately $100 million from investors, and investors are still owed approximately $60 million in principal.

24.    To solicit and retain investors, the Smith Defendants represented that the funds would be invested in highly liquid securities through various sophisticated and profitable trading strategies with consistently high returns, including those that they were uniquely positioned to pursue because of their access to the trading floor of the Philadelphia Stock Exchange.

25.    In reality, only a small fraction of investor money was actually used for these trading strategies. The vast majority of these investments were moved through bank accounts Smith controlled, funneled into unrelated companies, used to pay back other investors, or utilized for Smith's personal use.

26.    Smith's fraudulent misappropriation and use of investors' funds caused the Receivership Parties to suffer harm, which the Receiver seeks to redress under Court authority.

27.     Smith was able to conceal her fraudulent misappropriation and mishandling of investor funds through numerous misrepresentations to existing and prospective investors and others, including, *inter alia*, by generating and providing, directly or indirectly, false performance statements and fabricated documents regarding the Fund's assets and valuations.

## Transfer of Receivership Assets to Defendant

28.     Over the following series of transactions, Smith transferred $1,040,000.00 to and/or for the benefit of Defendants:

  a. On or about January 26, 2018, Smith caused $50,000.00 to be transferred to Entercore from Investment Consulting;

  b. On or about February 1, 2018, Smith caused $20,000.00 to be transferred to Entercore from Investment Consulting;

  c. On or about February 8, 2018, Smith caused $50,000.00 to be transferred to Entercore from Investment Consulting;

  d. On or about February 14, 2018, Smith caused $70,000.00 to be transferred to Entercore from Investment Consulting;

  e. On or about February 26, 2018, Smith caused $200,000.00 to be transferred to Entercore from Investment Consulting;

  f. On or about March 12, 2018, Smith caused $150,000.00 to be transferred to Entercore from Investment Consulting;

g. On or about March 21, 2018, Smith caused $200,000.00 to be transferred to Entercore from Investment Consulting;

h. On or about April 11, 2018, Smith caused $50,000.00 to be transferred to Entercore from Investment Consulting;

i. On or about April 17, 2018, Smith caused $50,000.00 to be transferred to Entercore from Investment Consulting;

j. On or about May 3, 2018, Smith caused $200,000.00 to be transferred to Entercore from Investment Consulting.

29.     Upon information and belief, some or all of the above-referenced transfers were utilized by Denise and/or Entercore to purchase and/or attempt to purchase property in California.

30.     There may have been additional transfers made to, on behalf, at the request, or for the benefit of Defendants, which the Receiver has not yet identified, which are subject to the Receiver's demand for an accounting.

31.     Financial books and records belonging to the Receivership Parties and/or Smith provide no indication that any of the funds paid to, on behalf, at the request, or for the benefit of Defendants were ever repaid to the Receivership Parties.

32.     Upon information and belief, the Receivership Parties did not receive anything of value, or reasonably equivalent value, in exchange for these transfers to, on behalf of, at the request of or for the benefit of Defendants.

33.     The transferred funds were derived directly or indirectly from investments made by investors in the Fund.

34.     These payments from the Receivership Parties represent an unauthorized use of investor funds, because these payments bear no relationship to the Trading Strategies investors of Broad Reach Capital and TA 1, LLC had authorized Smith to pursue with their money.

## COUNT I (AGAINST ALL DEFENDANTS)
## ACTION TO AVOID FRAUDULENT AND VOIDABLE TRANSFERS

35.     Receiver hereby incorporates Paragraphs one (1) through thirty-four (34) of this Complaint as if set forth at length herein.

36.     As set forth in detail above, Receivership Party Investment Consulting, LLC made payments and/or distributions to, for the benefit of, at the request of, and/or on behalf of, Defendants in 2018.

37.     All transfers of Investment Consulting, LLC to, for the benefit of, at the request of and/or on behalf of Defendants were fraudulent and voidable transfers within the meaning of the Pennsylvania Uniform Voidable Transactions Act (previously known as the Pennsylvania Uniform Fraudulent Transfer Act), 12

11

Pa.C.S.A. § 5101, *et seq.*, the California Uniform Voidable Transactions Act, Cal.

Civ. Code § 3439, *et seq.*, and/or the Montana Uniform Fraudulent Transfer Act,

MC 31-2-326, *et seq.*

38.     Smith caused the transfer of assets to, for the benefit of, at the request

of and/or on behalf of Defendants during the course of her operation of a

fraudulent scheme.

39.     Because Smith operated Investment Consulting as part of a fraudulent

investment scheme, all transfers of its assets to, for the benefit of, at the request of

and/or on behalf of Defendants were made with actual intent to hinder, delay

and/or defraud the Receivership Parties' creditors and/or debtors, and are

fraudulent and voidable.

40.     When the transfers were made to, for the benefit of, at the request of

and/or on behalf of Defendants, Smith was operating Investment Consulting, LLC

as part of a fraudulent investment scheme intending to incur, or believing or

reasonably believing that the Receivership Parties would incur, debts beyond their

ability to pay them as they became due.

41.     The Receivership Parties were insolvent or became insolvent shortly

after and/or as a result of the transfers made and were unable to pay their debts as

they became due.

42.     Defendants participated in the fraudulent and voidable transactions at issue as they received the benefit of the transfers.

43.     Defendants did not take the fraudulent and voidable transactions in good faith, and did not provide any reasonably equivalent value to the Receivership Parties in exchange for these transfers.

44.     The Receiver is entitled to avoid the fraudulent and voidable transfers to inure to the benefit of the Receivership Estate and in order to maximize the recovery available to the defrauded investors.

### Prayer for Relief as to Count I

WHEREFORE, Receiver requests this Court enter a judgment in his favor and against Defendants, Jordan Denise, Entercore, Inc. and Orange Splendor, Inc. avoiding, setting aside, and requiring repayment of the net amount of the transfers made to them, at their request, for their benefit and/or on their behalf by Investment Consulting, LLC, as well as an attachment or other appropriate remedy against the assets transferred or other property of the Defendants. To the extent any of these funds have been used to acquire real or personal property in which Defendants claims an interest, Receiver also seeks a constructive trust and/or equitable lien over those assets, or alternatively, recovery of the asset(s) purchased with the Receivership Assets. The Receiver also requests interest, costs, and such other and further relief as this Court may deem just and proper.

## COUNT II (AGAINST ALL DEFENDANTS)
## UNJUST ENRICHMENT

45.     Receiver hereby incorporates Paragraphs one (1) through forty-four (44) of this Complaint as if set forth at length herein.

46.     The Receivership Parties conferred a benefit on Defendants through the transactions set forth above.

47.     Defendants knowingly and voluntarily accepted and retained the benefits conferred upon them by the Receivership Parties.

48.     The circumstances are such that it would be inequitable and unjust for Defendants to retain the benefits conferred by the Receivership Parties without paying the Receiver the value thereof.

### Prayer for Relief as to Count II

WHEREFORE, Receiver requests this Court enter a judgment in his favor and against Defendants, Jordan Denise, Entercore, Inc. and Orange Splendor, Inc., in the amount they were unjustly enriched, including through disgorgement of sums equal to these amounts. To the extent any of these funds have been used to acquire real or personal property in which the Defendants claim an interest, Receiver also seeks a constructive trust and/or equitable lien over those assets or alternatively, recovery of the asset(s) purchased with the Receivership Assets. The

Receiver also requests interest, costs, and such other and further relief as this Court may deem just and proper.

## COUNT III (AGAINST ALL DEFENDANTS)
## DEMAND FOR AN ACCOUNTING

49.　Receiver hereby incorporates Paragraphs one (1) through forty-eight of this Complaint as if set forth at length herein.

50.　The Receiver is the successor in interest to the Receivership Parties and has assumed all of their rights and obligations, including without limitation the right to collect amounts owing on purported loans and advances made by the Receivership Parties.

51.　The Receiver has determined that Smith caused the transfer in excess of $1 million in Receivership Assets to, for the benefit of, at the request of, and/or on behalf of Defendants in 2018, pursuant to the transactional history set forth above.

52.　The Receiver lacks the information to determine whether these were the only transfers made by Receivership Parties to, for the benefit of, at the request of, and/or on behalf of, Defendants, during Smith's operation of the fraudulent scheme.

53.　Additionally, the information necessary to determine the true nature of these transactions, and to identify the existence of any additional transactions, is wholly or largely within the knowledge and control of Defendants.

54.     The transactions in question occurred during the perpetration of a fraud, namely the fraudulent scheme operated by Smith through the Receivership Parties.

55.     The Receivership Order grants the Receiver the authority to demand an accounting from parties who engaged in transactions with the Receivership Parties and/or who may possess Receivership Assets.

## **Prayer for Relief as to Count III**

WHEREFORE, Receiver requests this Court enter a judgment in his favor and against Defendants, Jordan Denise, Entercore, Inc. and Orange Splendor, Inc., requiring them to provide a full and accurate accounting of any and all assets received from, payments made on its behalf by, or transactions engaged in with, the Smith Defendants and Receivership Parties, and additionally requests interest, costs, and such other and further relief as this Court may deem just and proper.


Respectfully Submitted,

Dated: 1/26/2022

*s/ Robin S. Weiss*_____
Robin S. Weiss (N.J. ID. 018182011)
Conrad O'Brien PC
1500 Market Street, Suite 3900
Centre Square, West Tower
Philadelphia, PA 19102
Phone: 215-864-9600
Fax: 215-864-9620
rweiss@conradobrien.com
*Attorney for Receiver, Kevin Dooley Kent*

16

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Kevin Dooley Kent, in his capacity as Receiver for Broad Reach Capital, LP, Broad Reach Partners, LLC, Bristol Advisors, LLC, Investment Consulting LLC and CV Investments LLC

**DEFENDANTS**

Jordan Denise a/k/a Denise Jordan, Entercore, Inc. and Orange Splendor, Inc.

**(b)** County of Residence of First Listed Plaintiff   Philadelphia County, PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Orange County, CA
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Robin S. Weiss, Esq., Conrad O'Brien PC, 1500 Market Street, Suite 3900, Centre Square, West Tower, Philadelphia, PA 19102, (215) 864-9600, rweiss@conradobrien.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | **PERSONAL INJURY** | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | **LABOR** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☒ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 890 Other Statutory Actions |
| | | | ☐ 751 Family and Medical Leave Act | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | **SOCIAL SECURITY** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 861 HIA (1395ff) | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | ☐ 862 Black Lung (923) | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 863 DIWC/DIWW (405(g)) | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 864 SSID Title XVI | |
| | | ☐ 550 Civil Rights | ☐ 865 RSI (405(g)) | |
| | | ☐ 555 Prison Condition | **FEDERAL TAX SUITS** | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| | | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | |
| | | ☐ 462 Naturalization Application | | |
| | | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 754

Brief description of cause:
SEC Receivership Asset Recovery

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
$1,040,000.00 +

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE   Hon. Madeline Cox Arleo

DOCKET NUMBER   2:19-cv-17213 (MCA)

DATE   1/26/2022

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|
| | | | | |

Case 2:22-cv-00380-SPC-NPM Document 106-1 Filed 06/16/22 Page 20 of 86
Case 2:20-cv-00383-CCC-ESK Document 1-2 Filed 07/31/24 Page 219 of
PageID: 1220

# EXHIBIT "A"

Case 2:22-cv-00389-MCA-LDW Document 2-2 Filed 06/16/25 Page 1 of 86 PageID: 2206
Case 2:19-cv-17213-MCA-ESK Document 1 Filed 08/27/19 Page 1 of 86 PageID: 1
PageID: 1221

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | |
| | : | |
| | : | Civil Action No. |
| Plaintiff, | : | |
| | : | Complaint for Violations of the |
| v. | : | Federal Securities Laws |
| | : | |
| BRENDA A. SMITH, BROAD REACH | : | Jury Trial Demanded |
| CAPITAL, LP, BROAD REACH | : | |
| PARTNERS, LLC, and BRISTOL | : | |
| ADVISORS, LLC, | : | |
| | : | |
| Defendants. | : | |
| | : | |

Plaintiff Securities and Exchange Commission (the "Commission"), One Penn Center, 1617 JFK Boulevard, Suite 520, Philadelphia, Pennsylvania 19103, alleges as follows against the following defendants, whose names and last known addresses are set forth below:

a. Brenda A. Smith
   222 West Rittenhouse Square
   Penthouse 3
   Philadelphia, PA 19103

b. Broad Reach Capital, LP
   200 Four Falls, Suite 211
   1001 Conshohocken State Road
   West Conshohocken, PA 19428

c. Broad Reach Partners, LLC
   200 Four Falls, Suite 211
   1001 Conshohocken State Road
   West Conshohocken, PA 19428

d. Bristol Advisors, LLC
   200 Four Falls, Suite 211
   1001 Conshohocken State Road
   West Conshohocken, PA 19428

## **SUMMARY**

1. This case involves an investment advisory fraud in which Brenda A. Smith and the other Defendants solicited over $100 million from investors for purported investment in sophisticated securities trading strategies. However, Smith took the vast majority of these funds for unrelated companies, to pay back other investors, and for personal use. And, in 2019, confronted with at least one investor trying to redeem its investment, Smith created a fictitious valuation of assets backed by false claims that she held billions of dollars in assets through a company she owned.

2. From at least February 2016 through the present, Smith, defendant Broad Reach Capital, LP ("Broad Reach Fund" or the "Fund"), defendant Broad Reach Partners, LLC ("Partners"), and defendant Bristol Advisors, LLC ("Bristol")

2

(collectively, without Smith, the "Entity Defendants"), engaged in this fraud. Smith dominated and controlled the Entity Defendants such that they were essentially her alter egos.

3.     Through the Entity Defendants, Smith offered limited partnership interests in the Fund to investors beginning in early 2016.  Since the Fund's inception, Smith raised approximately $105 million from at least 40 investors, and investors are still owed more than $63 million in principal.

4.     To solicit and retain investors, Defendants represented that the Fund employed several profitable, sophisticated trading strategies involving highly liquid securities, including those that it was uniquely positioned to pursue because of its access to the Philadelphia Stock Exchange trading floor ("Trading Strategies").  In reality, only a small fraction of investor money was actually used for these strategies.

5.     The vast majority of the funds were moved through the bank accounts of entities Smith controls and ultimately used to, among other things, make her own personal investments and to repay other investors.  To lull existing investors and solicit additional investments, Defendants provided monthly account statements reflecting high returns and "tear sheets" touting the Fund's overall

3

claimed 30%+ yearly return and that the Fund had never had a losing month. These and other performance statements were false.

6.      In recent months, several investors have tried—in vain—to redeem. In July 2019, in response to investors' concerns, Defendants distributed a document valuing the Fund's assets at over $180 million ("Asset List").  To support this valuation, Smith claimed that she owned a $2.5 billion bond issued by a publicly traded financial institution (the "Bond") and had transferred $100 million of the Bond to the Fund.  She even provided purported brokerage statements reflecting the supposed $2.5 billion holding.  But the documents are fake, and thus, more than $100 million of claimed holdings of the Fund are an obvious fiction.  The vast majority of investors' money is gone from the Fund.

7.      The Defendants engaged in a fraudulent scheme and made material misrepresentations and omissions to investors and prospective investors.  Smith and Bristol also abused their position and breached their fiduciary duties as investment advisers by making material misrepresentations and omissions and failing to act in the best interest of the Fund.

8.      By engaging in the conduct described in this Complaint, Defendants violated, directly or indirectly, and unless enjoined will continue to violate, Section

4

17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]. In addition, because Smith and Bristol are investment advisers, by engaging in the conduct described in this Complaint, they also violated, directly or indirectly, and unless enjoined will continue to violate, Sections 206(1), (2), and (4) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. § 80b-6] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

### JURISDICTION AND VENUE

9.     The Commission brings this action pursuant to Sections 20(b) and 20(d) of the Securities Act [15 U.S.C. §§ 77t(b), (d)], Sections 21(d) and 21(e) of the Exchange Act [15 U.S.C. §§ 78u(d), (e)], and Sections 209(d) and 209(e) of the Advisers Act [15 U.S.C. §§ 80b-9(d), (e)] to enjoin such acts, practices, and courses of business, and to obtain disgorgement, prejudgment interest, civil money penalties, and such other and further relief the Court may deem just and appropriate.

10.     This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), (d), and 77v(a)]; Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), (e), and

78aa]; and Sections 209(d), 209(e), and 214 of the Advisers Act [15 U.S.C. §§ 80b-9(d), (e), 80b-14]. Defendants, directly or indirectly, made use of the mails, or the means and instrumentalities of interstate commerce, or the facility of national security exchanges, in connection with the transactions, acts, practices, and courses of business alleged in this complaint.

11.     Venue in this district is proper under Section 27 of the Exchange Act [15 U.S.C. § 78aa] and 28 U.S.C. § 1391(b), because certain acts, practices, transactions, and courses of business constituting violations of the federal securities laws occurred within the District of New Jersey. In connection with the fraud, Defendants sent, and/or caused to be sent, wire transmissions through the Fedwire Funds Service, which involved electronic communications between Federal Reserve facilities in New Jersey and Texas.

## THE DEFENDANTS

12.     Brenda A. Smith, age 60, is an individual who, upon information and belief, resides in Philadelphia, Pennsylvania. Smith owns and/or controls the Entity Defendants and many other entities. Smith operated all of the Entity Defendants out of the same office space in West Conshohocken, Pennsylvania. During the relevant period, Smith owned, controlled, and/or exercised dominion

6

over the Entity Defendants making them essentially her alter egos.  Until recently, Smith owned CV Brokerage, Inc., a registered broker-dealer, and held Series 7, 24, 27, 53, 63, 79, and 99 licenses.  On July 2, 2019, the Financial Industry Regulatory Authority ("FINRA") accepted a letter of Acceptance, Waiver, and Consent from Smith by which she agreed to be barred by FINRA in light of her failure to respond to a written request for documents and information pursuant to FINRA Rule 8210.

13.     Broad Reach Capital, LP (also referred to as "Broad Reach Fund" or "Fund") is a Delaware limited partnership established by Smith in February 2016 and operates as a purported hedge fund.  The Fund's principal place of business is in West Conshohocken, Pennsylvania.

14.     Broad Reach Partners, LLC (also referred to as "Partners") is a Delaware limited company with its principal place of business in West Conshohocken, Pennsylvania.  It serves as the general partner for the Fund.  Partners has no employees other than Smith and conducts no business other than serving as the Fund's general partner.  Partners passed much of the money invested in the Fund through its bank account to entities or accounts controlled by Smith.

15.     Bristol Advisors, LLC (also referred to as "Bristol") is a Delaware limited liability company with a principal place of business in West

7

Conshohocken, Pennsylvania.  It is a registered investment advisor that purports to provide investment advisory services to its sole client, the Fund.  Smith is the sole owner of Bristol and the person who makes all advisory decisions for Bristol. Bristol has no business operations other than advising the Fund.

## **RELEVANT PERSONS AND ENTITIES**

16.     CV International Investments, Ltd., is a purported UK company with its principal place of business in London, UK.  Smith formed CV International and controls it.

17.     "Investor 1" is an individual residing in Florida.  Investor 1 invested his own assets with the Fund.

18.     "Investor 2" is an individual residing in Puerto Rico.  Investor 2 invested assets of investment vehicles he controlled with the Fund.  Later, he combined and merged these investments into an investment made by Investor 3.

19.     "Investor 3" is a limited partnership with its principal place of business in Montreal, Canada.

# FACTS

## A. Smith Controlled the Entity Defendants and Misused Investor Funds

20.     Smith dominated and controlled each of the Entity Defendants—the Fund, Partners, and Bristol—such that they were essentially her alter-egos.  She controlled their brokerage and bank accounts, and every other aspect of the businesses.  In addition, during the period February 2016 to the present, Smith also controlled or had signatory authority on the brokerage and/or bank accounts of at least 35 additional entities.

21.     Defendants offered limited partnership interests in the Fund to investors.  Defendants raised approximately $105 million from at least 40 investors since the Fund's inception.

22.     Defendants represented to investors and prospective investors that the Fund would invest their assets in the Trading Strategies, which involved highly liquid securities and which Defendants claimed the Fund was uniquely positioned to pursue.

23.     However, contrary to those representations, investors' money rarely ended up in the brokerage accounts participating in the Trading Strategies that

9

Case 2:22-cv-00388-RGK-E Document 1-2 Filed 02/26/22 Page 10 of 86 Page ID 80
Case 2:19-cv-17213-MCA-ESK Document 1 Filed 08/27/19 Page 10 of 86 PageID: 1230
PageID: 1230

Defendants had touted and promised. Defendants used only a small fraction of the money received from investors to engage in the Trading Strategies.

24. Instead, Defendants funneled the bulk of investor funds through a web of entities Smith controlled. Ultimately, Smith used the funds to make her own apparent investments wholly unrelated to the Trading Strategies. There is no evidence that the Fund owns any of these other investments.

25. Unbeknownst to investors, Defendants also used some of the money they had invested to pay other investors seeking to redeem. Further, since the Fund's inception, Smith used over $2 million of the Fund's assets (filtered through three of her entities) to pay American Express bills. None of this capital was engaged in the claimed profitable Trading Strategies.

26. Indeed, although investors contributed approximately $105 million to the Fund, the high point of all brokerage and bank accounts in the name of the Fund and its purported affiliates was no more than $31.8 million in December 2016.

27. Since December 2016, the total assets within bank and brokerage accounts of the Broad Reach Fund have steadily declined, even as tens of millions of new investment money poured into the Fund.

10

## B. Defendants Made Material Misrepresentations and Omissions to Induce Investors to Invest

### 1. The Fund's Written Materials Marketed the Trading Strategies to Potential Investors

28.     According to the Fund's Private Placement Memoranda ("PPM"), the Fund's investment objective and strategy is to "invest its account with managers that represent a diverse set of assets" that would include "equities, bonds, options, commodities, foreign exchange, and energy."

29.     In other documents Defendants provided to investors, created by Smith or at her direction, Defendants presented an even narrower focus, stating that the Fund would invest in the Trading Strategies. For example, the Fund's "Investor Presentation," dated February 2018, made clear that the Fund's strategy was an equities trading strategy designed to "[i]dentify, utilize, monitor and manage the managers who execute risk strategies through proven mathematical models to generate positive uncorrelated returns." A series of "[c]ompetitive advantages" listed in the presentation exclusively referred to securities trading. The presentation also provided detailed charts relating to the three primary securities trading strategies: Dividend Capture, Short-Term Opportunistic Trading, and VIX Convergence.

11

30.     In or about October 2016, Defendants provided a "tear sheet" (a single-page document touting the returns of the Fund's Trading Strategies) to certain current and prospective investors, including Investor 2.  This tear sheet purported to reflect the Fund's historical performance and mentioned no investments other than the Trading Strategies.

31.     The tear sheet also posed the rhetorical question "Why Broad Reach," and went on to tout its "Distinctly Different Trading Strategies," "direct access to floor traders," and "specialized" trades.

32.     Similarly, Defendants provided a March 31, 2018 "tear sheet" to certain current and prospective investors (including Investor 2), purporting to reflect the Fund's historical performance.  Again, the tear sheet mentioned no investments other than the Trading Strategies, and touted an "efficient execution platform" and "high level of liquidity," noting that "[t]he current portfolio of strategies include Dividend Capture, VIX Convergence, Volatility Skew, S&P Premium Capture, Opportunities and Intraday Trading."  Each of these is a securities trading strategy.

33.     Both the Investor Presentation and the tear sheets also boasted of the Fund's steady, positive returns.  They included a chart reflecting that each month

since January 2015 (which predates the origin of the Fund itself by approximately a year) the Fund had positive returns, with the 2018 documents claiming annual returns of over 35% in 2016 and 33% in 2017. The presentation and 2018 tear sheet also asserted that the Fund had a positive return of 6.07% in the first three months of 2018, including a gain of 1.76% for February 2018.

34. In reality, the limited funds invested in the Trading Strategies declined by over 50% in February 2018. And, even when the Trading Strategies were profitable, there was simply not enough money devoted to them to generate the claimed positive returns for the overall Fund.

### 2. Defendants Defrauded Investors 1, 2, and 3

35. The specific experiences of three of Defendants' largest investors are illustrative of the fraud.

#### a. Investor 1

36. Investor 1 invested approximately $9.5 million in the Fund with the understanding, based on representations by Smith and written documentation concerning the Fund she provided, that his capital would be allocated to the Trading Strategies.

13

37.     Investor 1 confirmed this understanding in a December 1, 2016 side letter agreement, a document permitted by the Fund's Private Placement Memorandum.  That side letter specifically stated that Investor 1's investment would be allocated to the Trading Strategies and required Defendants to provide Investor 1 with written notice if any material changes in the Trading Strategies were made.  A list of the referenced Trading Strategies was attached to the side letter, which Smith signed on behalf of the Fund.

38.     Despite the side letter and other representations, Defendants only used a small portion of Investor 1's funds in the Trading Strategies.

39.     For example, between December 19, 2016 and January 23, 2017, Defendants received over $8.9 million in new funds from investors into the Fund's bank account (as well as a $1 million transfer from a brokerage account), of which $5.6 million was an investment made by Investor 1.  However, only $550,000 of the $9.9 million was transferred to Fund brokerage accounts for trading.

40.     Instead, Defendants transferred over $8.7 million of that investor capital to other entities that Smith controlled.  Smith appears to have used this money for, among other things, a mining and mineral company and a restaurant, entities with no relation to the Trading Strategies.

14

41.     There is no evidence that these entities were owned by the Fund, and bank records do not reflect that they paid any returns to the Fund. Moreover, these entities are not even identified as "investments," either in the Fund's 2016 Financial Statements disseminated to investors or on the Asset List distributed to investors in July 2019. Smith simply took these funds for her own personal investment or use.

### b. Investor 2

42.     Investor 2 understood from the Defendants that his investment would be used exclusively to trade securities using the Trading Strategies. Defendants sent Investor 2 documents, touting the uniqueness of the Trading Strategies and their historically high returns, to induce investment.

43.     During a September 2016 meeting with Investor 2, Smith created a handwritten document for Investor 2 representing that the Fund derived all revenue and returns from the Trading Strategies.

44.     Investor 2 also received the false March 31, 2018 tear sheet with the fabricated February 2018 returns.

Case 2:22-cv-03338-RGK-ADS Document 1-2 Filed 02/26/22 Page 16 of 39 Page ID 86
Case 2:19-cv-17213-MCA-ESK Document 1 Filed 08/27/19 Page 16 of 39 PageID: 1236
PageID: 1236

45.     Investor 2 invested over $26.7 million with the Fund, in a series of payments over time, on behalf of certain investment funds he managed, including his family partnership.

46.     Defendants routinely used capital obtained from Investor 2 for purposes other than the Trading Strategies.  For instance, on July 5, 2017, Investor 2 wired $3 million to the Fund's bank account.  Within three days, over $2.2 million of that capital was transferred to other entities controlled by Smith, including $1.8 million to an entity that Smith utilized for her own investments.

47.     In May 2018, Investor 2 wired $5.43 million to the Fund's bank account, again with the understanding that this capital would be used in the Trading Strategies.  However, none of this money was transferred to a Fund brokerage account.  Instead, within weeks, Defendants transferred roughly half of Investor 2's funds to other entities controlled by Smith, and used the other half to fund redemptions by other investors in the Fund.

### c.  Investor 3

48.     Defendants similarly made oral and written misrepresentations to Investor 3 concerning the use of his investment funds.  To signify that its investment would involve the "dividend capture" trading strategy of the Fund,

16

Investor 3 went so far as to name the entity making the investment the "Dividend Capture" fund.

49.    As with Investor 1 and Investor 2, Defendants used only a small fraction of Investor 3's funds in any kind of securities trading.  Investor 3 first invested $2.285 million in late December 2018, transferring the funds to the Fund's bank account at a time when the balance in the account was less than $1,000.

50.    By January 15, 2019, Defendants had exhausted the more than $2 million invested by Investor 3, but had transferred only $31,875 to brokerage accounts.  Instead, Defendants caused the transfer of approximately $1.36 million to other entities Smith controlled and wired $1 million to a real estate firm, each with no relation to the Trading Strategies.

51.    On January 29, 2019, Investor 3 invested another $2 million in the Fund, wiring the money to the Fund's bank account at a time when the balance in the account was less than $75.  That same day, Defendants wired $2 million to another investor in the Fund with an outstanding redemption request.

52.    Two days later, on January 31, 2019, Investor 3 wired an additional $225,000 to the Fund's bank account.  That same day, Defendants wired the funds

17

obtained from Investor 3 to the aforementioned Fund investor to fund a redemption request.  None of Investor 3's January 2019 investments were deposited into a brokerage account for the purpose of conducting the Trading Strategies.

53.     Smith also misled Investor 3 regarding the Fund's historical performance during Investor 3's due diligence process.  During an August 30, 2018 phone call, Smith misrepresented to Investor 3 that the Fund's Trading Strategy relating to volatility had produced a substantial profit in February 2018.  To the contrary, the Fund's brokerage accounts suffered massive losses in February 2018, with the primary Broad Reach account losing over 50% of its value, dropping from approximately $17.7 million to approximately $8.8 million by the end of the month.

## C. Defendants Have Continued to Make Material Misrepresentations and Omissions About the Fund's Assets

54.     In approximately February 2019, Investor 2 transferred his investment in the Fund to Investor 3.  After this transfer, the Fund's books and records reflected that the total value of Investor 3's holdings was approximately $46.6 million.  This included all principal and purported investment gains for Investors 2 and 3.

18

55.     Shortly therafter, Defendants took issue with the transfer.  As a result of this dispute, in March 2019, Investor 3 decided to fully redeem the combined $46.6 million investment in the Fund.  Defendants accepted Investor 3's redemption request and stated that the funds would be wired on May 15, 2019.

56.     The Fund did not redeem Investor 3 on May 15, however, and Smith has made various excuses as to why the Fund has not fulfilled the redemption request.  Finally, on May 31, 2019, Defendants, still having failed to return Investor 3's investment, instead provided Investor 3 with what Smith claimed was the Fund's "proof of funds" to assure Investor 3 that his capital was intact.

57.     This "proof of funds" was a purported board resolution by CV International Investments Limited ("CV International"), another entity owned by Smith and unconnected to the Fund.  The resolution stated that CV International had transferred $100 million worth of a bond to the Fund, effective December 31, 2017.  Smith signed the document as a Director of CV International.

58.     Later that same day, Defendants emailed a purported bank statement to Investor 3 indicating that CV International owned $2.5 billion of the Bond referred to in the corporate resolution.  Defendants sent these documents to support the assertion that CV International—the supposed owner of the $2.5 billion

19

Bond—had transferred $100 million worth of the Bond to the Fund in December 2017, and thus, the Fund had sufficient capital to satisfy redemption requests.

59. Defendants also provided the Asset List—a one-page document listing the fund's purported assets as of June 30, 2019—to Investor 3. According to the Asset List, as of June 30, 2019, the Fund's assets were valued at over $180 million, with the largest asset being $129.56 million of the Bond.

60. Defendants listed the value of the Fund's brokerage account at only approximately $2.6 million, but even this limited amount was false. The actual June 2019 balance of the Fund's brokerage account was approximately $652,000.

61. Soon after, apparently spurred by other investors seeking redemptions, Defendants provided the Asset List to other investors in the Fund.

62. Smith's continuing claim that her entity, CV International, owns (or recently owned) $2.5 billion worth of the Bond is false and the brokerage statement indicating CV International's ownership is a fiction.

63. Public records indicate that the entire issuance of the Bond was valued at $2.5 billion. The real Bond is a liquid security that is actively traded in United States and international bond markets. Public records show that there are multiple, large institutional holders of the Bond. Conversely, there is no public record that

indicates that CV International, Defendants, or any other known entity controlled by Smith owns any of the Bond, let alone the entire issuance. Smith's claims that $100 million of the Bond's value (now inexplicably valued at over $129 million) was transferred to the Fund and represents 71% of the Fund's assets, are simply false.

64.     The majority of the Fund's other listed assets on the Asset List are also dubious. For instance, the Fund's second largest purported asset is $20.25 million in "securitized cryptocurrency." Attempting to substantiate this claim, Defendants provided Investor 3 with only a two-page, unintelligible document entitled "Wallet," which shows a few lines of text with dollar figures. Fund bank records do not reflect the purchase of this purported asset.

65.     Defendants are covering up a massive shortcoming in the Fund caused by the misuse of investor funds and losses generated by the Trading Strategies. Putting aside the outlandish and inaccurate claims of 30% plus yearly gains, of the approximately $105 million invested in the Fund, based on amounts returned to investors, almost always from other investors' money, the Fund still owes investors more than $63 million in principal.

21

66.    There is no evidence that assets sufficient to satisfy that obligation are currently held by the Fund or any other affiliated entity.

## D. Defendants Violated The Anti-Fraud Provisions of the Federal Securities Laws

67.    During the relevant period, Smith operated, controlled, and dominated the Entity Defendants such that they were essentially her alter egos.

68.    The limited partnership interests in the Fund sold by Defendants are investment contracts, and therefore securities.  Likewise, Defendants' fraudulent scheme concerned investing in securities.

69.    All of the misrepresentations and omissions set forth herein, individually and in the aggregate, are material.  There is a substantial likelihood that a reasonable investor would consider the misrepresented facts and omitted information regarding how their money would be invested, how the supposed investments performed, the value of those investments, and the ability to repay those investments important, and/or that disclosure of the omitted facts or accurate information would alter the "total mix" of information available to investors.

70.    In connection with the conduct described herein, Defendants acted knowingly and/or recklessly.  Among other things, Defendants knew or were

22

reckless in not knowing that they were making material misrepresentations and omitting material facts in connection with selling or offering of securities.

71.     Smith and the Entity Defendants had ultimate authority for their false and misleading statements and omissions made orally and in documents provided to clients and prospective clients.

72.     Defendants knowingly and/or recklessly disseminated false and misleading statements to investors and prospective investors with the intent to deceive.

73.     Through their material misrepresentations and omissions, Defendants knowingly, recklessly, or negligently obtained money or property from investors.

74.     Through this scheme, Defendants knowingly and/or recklessly engaged in acts, transactions or courses of business that operated as a fraud or deceit upon their investors and client.

75.     Smith and Bristol acted as investment advisers during the relevant period by providing investment advisory services for a fee.

76.     Smith and Bristol provided investment advisory services to a pooled investment vehicle, the Fund.

77.     In connection with the conduct described herein, Smith and Bristol breached the fiduciary duty they owed to the Fund.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Violations of Section 17(a) of the Securities Act
### (Against All Defendants)

78.     The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 77, above, as if the same were fully set forth herein.

79.     From at least February 2016 through the present, as a result of the conduct alleged herein, Defendants knowingly or recklessly or, with respect to subparts b and c below, negligently, in the offer or sale of securities, directly or indirectly, by the use of the means or instruments of transportation or communication in interstate commerce, or the means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange:

        a.     employed devices, schemes or artifices to defraud;

        b.     obtained money or property by means of, or made, untrue statements of material fact, or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were

24

made, not misleading; or

      c.    engaged in acts, transactions, practices, or courses of business that operated as a fraud or deceit upon offerees, purchasers, and prospective purchasers of securities.

80.    By engaging in the foregoing conduct, Defendants violated, and unless restrained and enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## SECOND CLAIM FOR RELIEF
### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder
### (Against All Defendants)

81.    The Commission re-alleges and incorporates by reference each and every allegation in paragraphs 1 through 77 inclusive, as if they were fully set forth herein.

82.    By engaging in the conduct described above, from February 2016 to the present, Defendants directly or indirectly, by use of the means or instruments of interstate commerce or of the mails, or the facility of a national securities exchanges, in connection with the purchase and sale of securities described herein, knowingly or recklessly:

      a.    employed devices, schemes, or artifices to defraud;

b.        made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

c.        engaged in acts, practices, and courses of business which operated or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

83.    Defendants knowingly, intentionally, or recklessly engaged in the aforementioned devices, schemes and artifices to defraud, made untrue statements of material facts and omitted to state material facts, and engaged in fraudulent acts, practices and courses of business.  By engaging in such conduct, Defendants acted with scienter, that is, with an intent to deceive, manipulate or defraud or with a severely reckless disregard for the truth.

84.    By reason of the foregoing, Defendants, directly and indirectly, violated and, unless restrained and enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## THIRD CLAIM FOR RELIEF
## Violations of Section 206(1) and (2) of the Advisers Act
## (Against Defendants Smith and Bristol)

85.     The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 77, above, as if the same were fully set forth herein.

86.     From at least February 2016 through the present, as a result of the conduct alleged herein, Defendants Smith and Bristol, knowingly or recklessly or, with respect to subpart b below, negligently, as investment advisers, directly or indirectly, by use of the means or instrumentality of interstate commerce or of the mails:

        a.     employed devices, schemes or artifices to defraud any client or prospective client;

        b.     engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon any client or prospective client.

87.     By engaging in the foregoing conduct, Defendants Smith and Bristol violated, and unless restrained and enjoined will continue to violate, Sections 206(1) and (2) of the Advisers Act [15 U.S.C. § 80b-6(1), (2)].

# FOURTH CLAIM FOR RELIEF
## Violations of Section 206(4) of the Advisers Act and Rule 206-4 thereunder
## (Against Smith and Bristol)

88.     The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 77, above, as if the same were fully set forth herein.

89.     Defendants Smith and Bristol, by engaging in the conduct described above, directly or indirectly, by use of means or instrumentalities of interstate commerce or use of the mails, which acting as investment advisors, engaged in acts, practices, or courses of business that were fraudulent, deceptive, and manipulative.

90.     Defendants Smith and Bristol, while acting as investment advisers to pooled investment vehicles:  (a) made untrue statements of material facts or omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading, to investors or prospective investors in the pooled investment vehicle; or (b) engaged in acts, practices, or courses of business that were fraudulent, deceptive, or manipulative with respect to investors or prospective investors in the pooled investment vehicle.

28

91.     By reason of the foregoing, Defendants Smith and Bristol violated and, unless restrained and enjoined, will continue to violate Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court enter a final judgment:

### I.

Permanently restraining and enjoining Defendants from, directly or indirectly, violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; and permanently restraining and enjoining Smith and Bristol from violating Sections 206(1), (2), and (4) of the Advisers Act [15 U.S.C. § 80b-6] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8];

### II.

Ordering disgorgement by Defendants of all ill-gotten gains or unjust enrichment with prejudgment interest, to effect the remedial purposes of the federal securities laws;

### III.

Ordering Defendants to pay civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and, as to Defendants Smith and Bristol, pursuant to Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)]; and

### IV.

Granting such other and further relief as this Court may determine to be just and necessary.

# JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff

demands that this case be tried to a jury.


Respectfully submitted,

By: /s/ John V. Donnelly III

Kelly L. Gibson
Scott A. Thompson
John V. Donnelly III
Mark R. Sylvester

Securities and Exchange Commission
1617 JFK Blvd., Suite 520
Philadelphia, PA 19103
Telephone:  (215) 597-3100
Facsimile:  (215) 597-2740
Email:  DonnellyJ@sec.gov

**ATTORNEYS FOR PLAINTIFF
SECURITIES AND EXCHANGE
COMMISSION**

Dated: August 27, 2019

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>          Plaintiff,<br><br>   v.<br><br>BRENDA A. SMITH, et al.,<br><br>          Defendants. | Case No.<br><br>**DESIGNATION OF AGENT FOR SERVICE** |

Pursuant to Local Rule 101.1(f), because the Securities and Exchange Commission (the "Commission") does not have an office in this district, the United States Attorney for the District of New Jersey is hereby designated as eligible as an alternative to the Commission to receive service of all notices or papers in the captioned action. Therefore, service upon the United States or its authorized designee, David Dauenheimer, Deputy Chief, Civil Division, United States Attorney's Office for the District of New Jersey, 970 Broad Street, 7th Floor,

Newark, NJ 07102 shall constitute service upon the Commission for purposes of this action.

Respectfully submitted,

s/ Scott A. Thompson
Scott A. Thompson

Attorneys for Plaintiff
U.S. Securities and Exchange Commission
Philadelphia Regional Office
1617 JFK Boulevard, Suite 520
Philadelphia, PA 19103
(215) 597-3100
ThompsonS@sec.gov

Case 2:22-cv-00388-BSJ Document 106-1 Filed 06/26/24 PageID.1254 Page 54 of 86
Case 2:22-cv-00388-BSJ Document 106-1 Filed 07/31/23 Page 54 of 86
PageID: 1254

# EXHIBIT "B"

Case 2:22-cv-02985-KSH-ESK Document 2-1 Filed 06/29/20 Page 3 of 39 PageID: 881
Case 2:19-cv-17213-MCA-ESK Document 21 Filed 06/26/20 Page 55 of 86
PageID: 1255

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | : | |
| | : | |
| | : | **C. A. No. 2:19-cv-17213 (MCA)** |
| **Plaintiff,** | : | |
| **v.** | : | |
| | : | |
| | : | |
| **BRENDA SMITH, BROAD REACH CAPITAL, LP, BROAD REACH PARTNERS, LLC, and BRISTOL ADVISORS, LLC,** | : | |
| | : | |
| | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

### [AMENDED PROPOSED] ORDER APPOINTING RECEIVER

**WHEREAS** this matter has come before this Court upon Plaintiff Securities and Exchange Commission's (the "SEC") Motion for an Order Appointing a Receiver;

**WHEREAS** Defendants and their affiliate entities possess significant assets—the full nature and extent of which are not currently known to the Court—including, but not limited to, cash, real and personal property, investments of any kind, such as ownership interests in companies or partnerships, minerals, cryptocurrency, and other assets, the value of which should be preserved during the pendency of this litigation;

**WHEREAS** the Court finds that, based on the record in these proceedings, the appointment of a receiver in this action is necessary and appropriate for the purposes of marshaling and preserving all assets of Defendants Brenda Smith; Broad Reach Capital, LP; Broad Reach Partners, LLC; and Bristol Advisors, LLC (collectively "Defendants") and affiliated companies owned or controlled by one or more Defendants, including BA Smith &

Associates LLC; Bristol Advisors LP; CV Brokerage, Inc; Clearview Distribution Services LLC;

CV International Investments Limited; CV International Investments PLC; CV Investments

LLC; CV Lending LLC; CV Minerals LLC; BD of Louisiana, LLC; TA 1, LLC; FFCC Ventures

LLC; Prico Market LLC; GovAdv Funding LLC; Elm Street Investors LLC; Investment

Consulting LLC; and Tempo Resources LLC ("Affiliated Entities"), that: (1) are attributable to

assets derived from investors or clients of Defendants; (2) are held in constructive trust for the

Defendants; (3) were fraudulently transferred by the Defendants; and/or (4) may otherwise be

included as assets of the estates of the Defendants or Affiliated Entities (collectively "the

Receivership Estate" or "Receivership Assets");

      **WHEREAS** this Court has subject matter jurisdiction over this action and personal

jurisdiction over Defendants, and venue properly lies in this district;

      **WHEREAS** nothing in this Order shall be construed as to require Smith to waive her

rights under the Fifth Amendment of the United States Constitution;

      **NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED**
**THAT:**

      1.     This Court hereby takes exclusive jurisdiction and possession of the Receivership

Assets, including, but not limited to, assets of the following Defendants and Affiliated Entities:

Broad Reach Capital, LP; Broad Reach Partners, LLC; Bristol Advisors, LLC; BA Smith &

Associates LLC; Bristol Advisors LP; CV Brokerage, Inc; Clearview Distribution Services LLC;

CV International Investments Limited; CV International Investments PLC; CV Investments

LLC; CV Lending LLC; CV Minerals LLC; BD of Louisiana, LLC; TA 1, LLC; FFCC Ventures

LLC; Prico Market LLC; GovAdv Funding LLC; Elm Street Investors LLC; Investment

Consulting LLC; and Tempo Resources LLC, (collectively, the "Receivership Parties"). The Receiver may petition the Court to add additional entities to the Receivership Parties.

2.  As way of further specification, the Receivership Assets shall also include the following known assets, believed to be owned, possessed, or controlled by the Receivership Parties or Brenda Smith ("Smith"): personal property at Smith's former residence at 222 West Rittenhouse Square, Penthouse 3, Philadelphia, Pennsylvania; any vehicles owned by Smith, the Receivership Parties, or Affiliated Entities; personal property and office equipment at the former office space used by Defendants at 200 Four Falls Corp., Suite 211, 1001 Conshohocken State Road, West Conshohocken, Pennsylvania; certain real property at David Road and Adams Road, Parish of Tangipahoa, Louisiana; bank or brokerage accounts held or controlled by Smith; interests in any securities (such as stock, bonds, and options); any securities purchased by Prico LLC, including but not limited to securities of LYFT Inc. and Palantir Technologies; interests in any cryptocurrency, digital currencies, or virtual currencies; digital or electronic property; intellectual property; receivables; minerals or mineral rights; and interests in any companies or partnerships.

3.  Moreover, the Receivership Assets also include frozen accounts in the names of the following: Prophecy Alpha Fund LP; Raffle Trading LLC; Ardeleigh Investment Advisory Services, Ltd.; Taylor Trading LLC; Awooton Consulting; and Rybicki Capital Partners LLC. It is understood that certain third parties, including Taylor Trading LLC, Awooton Consulting, and Rybicki Capital Partners LLC, have expressed an interest in or ownership of certain assets. Nothing in this Order shall be considered an adjudication of such asserted rights or claims, and it is without prejudice to such claims being asserted in this Court.

Case 2:22-cv-00983-BNR-ESW Document 121-1 Filed 06/29/2023 Page 58 of 86 PageID: 86
Case 2:19-cv-17213-MCA-ESK Document 21 Filed 06/29/2004 Page 33 of 61 PageID: 784
PageID: 1258

4.      To the extent any person or entity believes that these assets, or any of the Receivership Parties is not a proper part of the Receivership Estate, he, she, or it may petition the Court for relief.

5.      Until further Order of this Court, Kevin D. Kent, Esq., of the firm Conrad O'Brien, is hereby appointed to serve without bond as receiver (the "Receiver") to assume control of, marshal, pursue, and preserve the Receivership Assets.

## I.      Asset Freeze

6.      Previously, the Court issued a Preliminary Injunction Freezing Assets and Granting Other Relief in this matter.  (Dkt. 7).  Except as otherwise specified herein, that asset freeze remains in effect.  Furthermore, to the extent not encompassed by the Preliminary Injunction and except as otherwise specified herein, all assets of Defendants and Receivership Parties (collectively, "Receivership Assets") are frozen until further order of this Court. "Receivership Assets" means assets of any and every kind whatsoever, including without limitation all assets described in this Order, that are: (a) owned, controlled, or held, in whole or in part, by or for the benefit of any of the Receivership Parties; (b) in the actual or constructive possession of any of the Receivership Parties, or other individual or entity acting in concert with any of the Receivership Parties; (c) held by an agent of any of the Receivership Parties, including as a retainer for the agent's provision of services; or (d) owned, controlled, or held, in whole or in part, by, or in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, trust, or other entity directly or indirectly owned, controlled, or held, in whole or in part, by any of the Receivership Parties, including assets that have been transferred to other persons or entities but as to which assets such persons or entities do not have a legitimate claim.  Accordingly, all persons, institutions, and entities with direct or indirect control over any Receivership Assets— other than the Receiver or law enforcement officials acting within the

course and scope of their official duties—are hereby restrained and enjoined from directly or indirectly transferring, setting off, receiving, changing, selling, pledging, assigning, liquidating or otherwise disposing of or withdrawing such Receivership Assets. This freeze shall include, but not be limited to, Receivership Assets that are on deposit with financial institutions such as banks, brokerage firms, and mutual funds, or other institutions, including but not limited to interests in loans, participation agreements, companies, partnerships, and/or their successors and assigns.

## II.  General Powers and Duties of Receiver

7.  Except as limited herein, the Receiver shall have all powers, authorities, rights, and privileges heretofore possessed by the officers, directors, managers, and general and limited partners of the Receivership Parties under applicable state and federal law, by the governing charters, by-laws, articles and/or agreements in addition to all powers and authority of a receiver at equity, and all powers conferred upon a receiver by the provisions of 28 U.S.C. §§ 754, 959 and 1692, Fed. R. Civ. P. 66, and this Order, including but not limited to paragraphs 48 and 49 of this Order.

8.  The trustees, directors, officers, managers, investment advisors, accountants, attorneys, and other agents of the Receivership Parties are hereby dismissed and the powers of any partners, directors, and/or managers are hereby suspended. Such persons and entities shall have no authority with respect to the Receivership Parties' operations or assets, except to the extent as hereafter may be expressly granted by the Receiver. This Order, however, does not dismiss Defendants' attorneys, if any, who file an appearance in this action, nor does it authorize any payments to any such attorneys from assets of the Receivership Parties. The Receiver shall assume and control the operation of the non-individual Receivership Parties and shall preserve all of their claims or interests using the powers set forth in this Order.

Case 2:22-cv-02289-MSN-atc    Document 1-21    Filed 06/29/2007    Page 60 of 86    PageID: 86
Case 2:19-cv-14215-MCA-ESK    Document 21    Filed 06/29/2007    Page 8 of 34    PageID: 86
PageID: 1260

9.      The Receiver shall not have the power to initiate suits in law or in equity without further Order of this Court, except and to the extent necessary to preserve any limitations period in which case the Receiver shall seek this Court's approval to proceed any further with any such suit.

10.     No person holding or claiming any position of any sort with any of the Receivership Parties shall possess any authority to act by or on behalf of any of the non-individual Receivership Parties, unless expressly authorized, in writing, by the Receiver.

11.     Subject to the specific provisions in Sections III through XIV, below, the Receiver shall have the following general powers and duties:

> A.      To use reasonable efforts to determine the nature, location, and value of all property interests of the Receivership Parties, including, but not limited to, monies, funds, securities, credits, investments, savings, options, shares, cash, currencies, checks, accounts, real property, vehicles, boats, equipment, fixtures, effects, goods, chattels, lands, premises, leases, claims, causes of action, notes, membership interests in any limited liability company, partnership interests, contracts, certificates of title, instruments, inheritances, interests in any trust, art, collectibles, furnishings, jewelry, personal effects, digital currencies, virtual currencies, cryptocurrencies, digital or electronic property, intellectual property, receivables, minerals or mineral rights, casino accounts, deposits, or chips, rights, and other assets, together with all rents, profits, dividends, interest, or other income attributable thereto, of whatever kind, which the Receivership Parties own, possess, have a beneficial interest in, or control

directly or indirectly;

B.    To take custody, control, and possession of all Receivership Assets and records relevant thereto from Smith and the Receivership Parties;

C.    To manage, control, operate, and maintain the Receivership Estate and hold in his possession, custody, and control all Receivership Assets, pending further Order of this Court;

D.    To use Receivership Assets for the benefit of the Receivership Estate, making payments and disbursements and incurring expenses as may be necessary or advisable in the ordinary course of business in discharging his duties as Receiver;

E.    To take any action which, if not for the entry of this Order, could have been taken by the officers, directors, partners, managers, trustees, and agents of the Receivership Parties, except as limited by this Order;

F.    Subject to other provisions of this Order, including paragraph 69, to engage and employ persons in his discretion to assist him in carrying out his duties and responsibilities hereunder, including, but not limited to, accountants, attorneys, securities traders, registered representatives, financial or business advisers, liquidating agents, real estate agents, forensic experts, brokers, traders, or auctioneers, provided that the reasonable expected cost for any such engagements does not exceed $10,000 in a calendar year;

G.    To take such action as necessary and appropriate for the preservation of Receivership Assets or to prevent the dissipation or concealment of

Case 2:22-cv-00800-RAH-ECM  Document 11-1  Filed 06/23/27  Page 63 of 86
Case 2:19-cv-17213-MCA-ESK  Document 21  Filed 06/25/2004  Page 3 of 624  PageID: 788
PageID: 1262

Receivership Assets;

    H.    To issue subpoenas for documents and testimony consistent with the

Federal Rules of Civil Procedure;

    I.    Subject to other provisions of this Order, including paragraphs 38-40,

resist and defend all suits, actions, claims and demands which may now be

pending or which may be brought by or asserted against the Receivership

Parties or Receivership Assets;

    K.    To establish and operate a website for the Receivership, to facilitate

dissemination of information to investors and for such other purposes as

the Receiver deems appropriate and in the interest of the Receivership

Estate; and

    J.    To take such other action as may be approved by this Court.

12.    Unless otherwise limited by this Order, the Receiver is authorized to exercise all equitable powers under applicable law.

13.    The Receiver may delegate to his agents any of the powers of the Receiver granted to him by this Order.

14.    The Receiver may seek further Orders of this Court regarding standing powers of the Receiver, operations of Receivership Parties, and administration of Receivership Assets as may be deemed necessary to conserve the Receivership Assets, secure the best interests of creditors, investors, and other stakeholders of the Receivership Parties, and protect the interests of the Receiver.

**III.    Access to Information**

15.    Smith and the past and/or present officers, directors, agents, managers, general and limited partners, trustees, attorneys, accountants, and employees of the Receivership Parties,

Case 2:22-cv-00381-DBC-ESP Document 168 Filed 01/20/25 Page 63 of 86 PageID: 86
Case 2:19-cv-17213-MCA-ESK Document 24 Filed 06/29/20 Page 5 of 32 PageID: 189
PageID: 1263

as well as those acting in their place, including third parties storing financial and other business information and/or email communications, or other assets or documents, are hereby ordered and directed to preserve and turn over to the Receiver forthwith all paper and electronic information of, and/or relating to, the Receivership Parties and/or all Receivership Assets; such information shall include but not be limited to books, records, documents, accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, details of items deposited, and check registers), client lists, title documents, writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, computer files, databases and other data compilations, including but not limited to records relating to any investments or other transfers of money or other assets made by or on behalf of Receivership Parties, including but not limited to all electronically stored records and information, including any information stored by third parties or using cloud-based services, access codes, security codes, passwords, safe deposit keys, combinations, and all other instruments, papers, and electronic data or records of any kind or nature. This does not, however, include any documents or files of Smith's personal attorneys, if any, that are protected by the work-product doctrine and/or attorney-client privilege.

16.     Within ten (10) days of the entry of this Order, the Receivership Parties shall serve upon the Receiver and the SEC a sworn statement, listing: (a) the identity, location, and estimated value of all Receivership Assets, including contact information for the party in possession of all assets of such Receivership Party, held jointly or singly, including without limitation all assets held outside the territory of the United States; (b) all employees (and job titles thereof), other personnel, attorneys, accountants, and any other agents or contractors of the Receivership Parties; and (c) the amount and nature of all liabilities of such Receivership Party,

including without limitation the names, addresses, and amounts of claims of all known creditors

of the Receivership Parties.  Such sworn statement shall include the names, addresses, telephone

numbers, facsimile numbers, and e-mail addresses of the holders of any legal, equitable, or

beneficial interests in such assets and the names, addresses, telephone numbers, facsimile

numbers, and e-mail addresses of any financial institutions or other persons or entities holding

such assets, along with the account numbers and balances.  The sworn statements shall be

accurate as of the date of this Order, shall be signed and verified as true and complete under

penalty of perjury.

     17.    Within thirty (30) days of the entry of this Order, the Receivership Parties shall

serve upon the Receiver and the SEC a sworn statement and accounting, with complete

documentation, covering the period from January 1, 2013 to the present:

     A.    Of all Receivership Assets, wherever located, held by or in the name of

the Receivership Parties, or in which any of them, directly or indirectly,

has or had any beneficial interest, or over which any of them maintained

or maintains and/or exercised or exercises control, including, but not

limited to: (a) all securities, investments, funds, real estate, automobiles,

jewelry, digital assets, including but not limited to any assets contained in

digital assets held at crypto-currency exchanges, and other assets, stating

the location of each; and (b) any and all accounts, including all funds held

in such accounts, with any bank, brokerage, or other financial institution,

or any other institution, including but not limited to casinos, held by, in the

name of, or for the benefit of any of them, directly or indirectly, or over

which any of them maintained or maintains and/or exercised or exercises

any direct or indirect control, or in which any of them had or has a direct or indirect beneficial interest, including the account statements from each bank, brokerage, or other financial institution;

B.     Identifying every account at every bank, brokerage, or other financial institution: (a) over which Receivership Parties have signatory authority; and (b) opened by, in the name of, or for the benefit of, or used by, the Receivership Parties;

C.     Identifying all credit, bank, charge, debit or other deferred payment card issued to or used by each Receivership Party, including but not limited to the issuing institution, the card or account number(s), all persons or entities to which a card was issued and/or with authority to use a card, the balance of each account and/or card as of the most recent billing statement, and all statements for the last twelve months;

D.     Of all assets received by any of Receivership Parties from any person or entity, including the value, location, and disposition of any assets so received;

E.     Of all funds received by the Receivership Parties, and each of them, in any way related, directly or indirectly, to the conduct alleged in the SEC's Complaint. The submission must clearly identify, among other things, all investors, the securities they purchased, the date and amount of their investments, and the current location of such funds;

F.     Of all expenditures exceeding $1,000 made by any of Receivership Parties, including those made on their behalf by any person or entity; and

G. Of all transfers of assets made by any of Receivership Parties.

18. Within thirty (30) days of the entry of this Order, the Receivership Parties shall provide to the Receiver and the Commission copies of the Receivership Parties' federal income tax returns for 2013 through the present with all relevant and necessary underlying documentation.

19. The Receivership Parties' past and/or present officers, directors, agents, attorneys, managers, shareholders, employees, accountants, debtors, creditors, managers and general and limited partners, and other appropriate persons or entities shall answer all questions which the Receiver may put to them and produce all documents as required by the Receiver regarding the business of the Receivership Parties, or any other matter relevant to the operation or administration of the receivership or the collection of funds due to the Receivership Parties. The Receiver maintains and controls the attorney-client privilege for all Receivership Parties, provided, however, that nothing in this Order shall operate as or effectuate a waiver of the attorney-client privilege regarding communications between Defendant Smith and her personal attorneys, if any, and such personal attorneys shall not be compelled by this Order to divulge information that would otherwise be protected by the attorney-client or any other applicable privilege.

20. The Receivership Parties are required to assist the Receiver in fulfilling his duties and obligations. As such, they must respond promptly and truthfully to all requests for information and documents from the Receiver. This cooperation and assistance shall include, but not be limited to: (a) providing any information or documents that the Receiver deems necessary or appropriate to the exercise of the Receiver's authority and the discharge of the Receiver's responsibilities under this Order; (b) providing any keys, including but not limited to

physical, digital, and cryptographic keys, codes, the combination to the safe located at the office

space used by one or more Receivership Parties at 200 Four Falls Corp., Suite 211, 1001

Conshohocken State Road, West Conshohocken, PA, device PINs, and passwords, including but

not limited to account, encryption, email account, financial account, online account (including

but not limited to web-based financial services and banking accounts) and computer passwords

required to access any computer, electronic file, or telephonic data in any medium; (c)

immediately advising all persons who owe money or currency of any kind to the Receivership

Parties that all debts should be paid directly to the Receiver; (d) providing full access to all

Receivership Assets; and (e) maintaining and not wasting, damaging, disposing of, or

transferring in any manner any Receivership Assets.

## IV.    Access to Books, Records, and Accounts

21.    The Receiver is authorized to take immediate possession of all assets, bank

accounts or other financial accounts, books, and records and all other documents or instruments

relating to the Receivership Parties.  All persons and entities having control, custody, or

possession of any Receivership Assets are hereby directed to turn such property, including but

not limited to all accounts, over to the Receiver.

22.    The Receivership Parties, as well as their agents, servants, employees, attorneys,

any persons acting for or on behalf of the Receivership Parties, including third party vendors of

the Receivership Parties, and any persons receiving notice of this Order by personal service,

facsimile transmission, overnight mail, U.S. mail, electronic mail, or otherwise, having

possession of the property, business, books, records, accounts, or assets of the Receivership

Parties are hereby directed to deliver the same to the Receiver, his agents, and/or employees.

23.    All banks, brokerage firms, financial institutions, and other persons or entities

which have possession, custody, or control of any assets or funds held by, in the name of, or for

the benefit of, directly or indirectly, the Receivership Parties that receive actual notice of this Order by personal service, facsimile transmission, electronic mail, or otherwise shall:

    A.    Not liquidate, transfer, sell, convey, or otherwise transfer any assets, securities, funds, or accounts in the name of or for the benefit of the Receivership Parties except upon instructions from the Receiver;

    B.    Not exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any funds or assets to the Receiver's control without the permission of this Court;

    C.    Within thirty (30) days of receipt of that notice, serve on the Receiver and counsel for the SEC a certified statement setting forth, with respect to each such account or other asset, the balance in the account or description of the assets as of the close of business on the date of receipt of the notice; and,

    D.    Cooperate expeditiously in providing information and transferring funds, assets, and accounts to the Receiver or at the direction of the Receiver.

## V.    Access to Real and Personal Property

24.    Promptly after service of this Order upon them, or within such period as may be permitted by the Receiver, upon the Receiver's request, all Receivership Parties, and all other persons in active concert or participation with any of them, and all financial institutions who receive actual notice of this Order, whether by personal service or otherwise, and whether acting directly or through any corporation, subsidiary, division, or other device, shall transfer or deliver to the Receiver's possession, custody and control all Receivership Assets as well as all records and other materials belonging to the Receivership Estate.

25.    The Receiver is authorized but not directed to take immediate possession of all personal property of the Receivership Parties, wherever located, including but not limited to

electronically stored information, computers, laptops, hard drives, external storage drives, and any other such memory, media or electronic storage devices, books, papers, data processing records, evidence of indebtedness, bank records and accounts, savings records and accounts, brokerage records and accounts, certificates of deposit, stocks, bonds, debentures, and other securities and investments, contracts, mortgages, furniture, office supplies, equipment, cars, and any personal property in Smith's former residence.

26.     The Receiver is authorized but not directed to take immediate possession of all real property of the Receivership Parties, wherever located, including but not limited to all ownership and leasehold interests and fixtures. Upon receiving actual notice of this Order by personal service, facsimile transmission, overnight mail, U.S. mail, electronic mail, or otherwise, all persons other than law enforcement officials acting within the course and scope of their official duties, are (without the express written permission of the Receiver) prohibited from: (a) entering such premises; (b) removing anything from such premises; or, (c) destroying, concealing, or erasing anything on such premises. This paragraph shall not be read to authorize or excuse any such action taken prior to the receipt of actual notice of this Order and the Receiver shall retain the authority to investigate and/or challenge any such action pursuant to the powers and duties set forth in this Order.

27.     In order to execute the express and implied terms of this Order, the Receiver is authorized to change door locks to the premises described above. The Receivership Parties, all other persons in possession or control of Receivership Assets, or any other person acting or purporting to act on their behalf, are ordered not to change the locks in any manner, nor to have duplicate keys made, nor shall they have keys in their possession during the term of the receivership.

28.     The Receiver is authorized to open all mail directed to or received by or at the offices or post office boxes of the Receivership Parties, and to inspect all mail opened prior to the entry of this Order, to determine whether items or information therein fall within the mandates of this Order.

29.     Upon the request of the Receiver, the United States Marshal Service, in any judicial district, is hereby ordered to assist the Receiver in carrying out his duties to take possession, custody and control of, or identify the location of, any assets, records, or other materials belonging to the Receivership Estate.  In addition, the Receiver is authorized to request similar assistance from any other federal, state, county, or civil law enforcement officer(s) or constable(s) of any jurisdiction.

### VI.        Notice to Third Parties

30.     The Receiver shall promptly give notice of his appointment to all known officers, directors, agents, employees, shareholders, creditors, debtors, managers, and general and limited partners of the Receivership Parties, as the Receiver deems necessary or advisable to effectuate the operation of the receivership.

31.     All persons and entities owing any obligation, debt, or distribution with respect to an ownership interest to any Receivership Party shall, until further ordered by this Court, pay all such obligations in accordance with the terms thereof to the Receiver, and its receipt for such payments shall have the same force and effect as if the Receivership Party had received such payment.  This requirement applies to, inter alia, the related, interpleader action filed in this district, and captioned *Spouting Rock Holdings, LLC v. Broad Reach Capital, LP, et al.*, No. 20-cv-02498 (D.N.J.) (MCA) ("Interpleader Action").  The funds at issue in the Interpleader Action shall be paid to the Receiver for the benefit of the Receivership Estate.  However, Spouting Rock

Holdings, LLC may appear in this action for the limited purpose of seeking any other remedies it sought in the Interpleader Action.

32. In furtherance of his responsibilities in this matter, the Receiver is authorized to communicate with, and/or serve this Order upon, any person, entity, or government office that he deems appropriate to inform them of the status of this matter and/or the financial condition of the Receivership Estate. All government offices which maintain public files of security interests in real and personal property shall, consistent with such office's applicable procedures, record this Order upon the request of the Receiver or the SEC.

33. The Receiver is authorized to instruct the United States Postmaster to hold and/or reroute mail which is related, directly or indirectly, to the business, operations, or activities of any of the Receivership Parties (the "Receiver's Mail"), including all mail addressed to, or for the benefit of, the Receivership Parties. The Postmaster shall not comply with, and shall immediately report to the Receiver, any change of address or other instruction given by anyone other than the Receiver concerning the Receiver's Mail. The Receivership Parties shall not open any of the Receiver's Mail and shall immediately turn over such mail, regardless of when received, to the Receiver. All personal mail of Smith, any mail appearing to contain privileged information, and/or any mail not falling within the mandate of the Receiver, shall be released to the named addressee or addressee's attorney by the Receiver. The foregoing instructions shall apply to any proprietor, whether individual or entity, of any private mail box, depository, business or service, or mail courier or delivery service, hired, rented, or used by the Receivership Parties. The Receivership Parties shall not open a new mailbox, or take any steps or make any arrangements to receive mail in contravention of this Order, whether through the U.S. mail, a private mail depository, or courier service.

34.     Subject to payment for services provided, any entity furnishing water, electric, telephone, sewage, garbage, or trash removal services to the Receivership Parties shall maintain such service and transfer any such accounts to the Receiver unless instructed to the contrary by the Receiver.

**VII.     Injunction Against Interference with Receiver**

35.     The Receivership Parties, other persons in possession or control of Receivership Assets, and all persons, other than law enforcement officials acting within the course and scope of their official duties, receiving notice of this Order by personal service, facsimile, electronic mail, or otherwise, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would:

    A.     Interfere with the Receiver's efforts to take control, possession, or management of any Receivership Assets; such prohibited actions include but are not limited to, using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Assets;

    B.     Hinder, obstruct or otherwise interfere with the Receiver in the performance of his duties; such prohibited actions include but are not limited to, concealing, destroying, or altering records or information;

    C.     Dissipate or otherwise diminish the value of any Receivership Assets; such prohibited actions include but are not limited to, releasing claims or disposing, transferring, exchanging, assigning or in any way conveying

18

Case 2:23-cv-17213-MCA-LSDR Document 14-am ent 20ed 02/26/25age 73 of 72PagelD: 799
Case 2:23-cv-17213-MCA-LSDR Document 14-am ent Filed 06/25/24 Page 73 of 72PagelD: 799
PageID: 1273

any Receivership Assets, enforcing judgments, assessments, or claims
against any Receivership Assets or any Receivership Defendant,
attempting to modify, cancel, terminate, call, extinguish, revoke or
accelerate (the due date), of any lease, loan, mortgage, indebtedness,
security agreement or other agreement executed by any Receivership
Defendant or which otherwise affects any Receivership Assets; or,

D.  Transact any of the business of the Receivership Parties or
transfer any Receivership Assets to anyone other than the Receiver or the
Receiver's expressly designated agents;

E.  Destroy, secret, deface, transfer, delete, or otherwise alter or dispose of
any documents of or pertaining to the Receivership Parties or the
Receivership Assets and to the extent any such documents are no longer in
existence, fail to disclose the nature and contents of such documents and
how, when, and by whom such documents were caused to no longer be in
existence;

F.  Fail to notify the Receiver of any Receivership Assets, including accounts
constituting Receivership Assets held in any name other than the name of
a Receivership Party, or by any person other than the Receivership Parties,
or fail to provide any assistance or information requested by the Receiver
in connection with obtaining possession, custody, or control of such
Receivership Assets;

G.  Refuse to cooperate with the Receiver or the Receiver's duly authorized
agents in the exercise of their powers, duties, or authority under any order

of this Court; or

H.     Interfere with or harass the Receiver, or interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Estate.

36.    The Receivership Parties shall cooperate with and assist the Receiver in the performance of his duties.

37.    The Receiver shall promptly notify the Court and SEC counsel of any failure or apparent failure of any person or entity to comply in any way with the terms of this Order.

**VIII.     Stay of Litigation**

38.    As set forth in detail below, the following proceedings, excluding the instant proceeding, all criminal, police, or regulatory actions, actions of the SEC related to the above-captioned enforcement action, and the civil proceedings described in paragraph 41 below, are stayed upon entry of this Order and until further Order of this Court:  all civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving: (a) the Receiver, in his capacity as Receiver; (b) any Receivership Assets, wherever located; (c) any of the Receivership Parties, including subsidiaries and partnerships; or (d) any of the Receivership Parties' past or present officers, directors, managers, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").

39.    The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including, but not limited to, the issuance or employment of process.

40. Except as set forth in paragraph 41 below, all Ancillary Proceedings are stayed in their entirety. Further, as to a cause of action accrued or accruing in favor of one or more of the Receivership Parties against a third person or party any applicable statute of limitation is tolled during the period in which this injunction against commencement of legal proceedings is in effect as to that cause of action.

41. This stay does not apply to the claims asserted against parties other than the Receivership Parties and Smith in the pending case in the Eastern District of Pennsylvania entitled *Surefire Dividend Capture, LP v. Brenda Smith, et al.*, Civil Action No.: 2:19-CV-04088-BMS, and the pending arbitration matter *Surefire Dividend Capture, LP v. Broad Reach Capital, LP, Broad Reach Capital, LLC, Bristol Advisors, LLC, and Brenda Smith*, JAMS Demand for Arbitration, Index No.: 1450006353 (collectively "Pending Third-Party Actions"). For clarity, the stay does not apply to Surefire's claims against Renato Escobar Iregui, William Thomas McCormack, Scott Anthony Kopenheffer, Sanville & Co., and the Nottingham Company. However, absent further order of this Court, the parties to the Pending Third-Party Actions are stayed from collecting on any judgment obtained in the Pending Third-Party Actions and this Court shall determine the equitable distribution of assets among interested parties and/or priority as to competing claims between the Receiver and parties in the pending Third-Party Actions, if any.

42. Any person seeking modification or relief from the stay imposed herein may, seven days after giving the Receiver and counsel for the Commission written notice by email, petition the Court for such modification or relief.

## IX.     Managing Assets

43.     The Receiver shall establish one or more custodial accounts at Bank of America, a federally insured bank, to receive and hold all cash equivalent Receivership Assets (the "Receivership Funds").

44.     The Receiver's deposit account shall be entitled "Receiver's Account, Estate of Broad Reach Capital, LP, et al." together with the name of the action, or a title to that effect.

45.     Without further Order of this Court, the Receiver may not liquidate or otherwise dispose of Receivership Assets, including real estate, other than in the ordinary course of business or in the Receiver's judgment the asset is of *de minimus* value and/or the costs associated with maintaining the asset is likely to exceed its value.

46.     The Receiver's duties shall include, using reasonable efforts, identifying, marshaling, taking custody of, and preserving the value of the Receivership Assets.  Defendant Smith shall retain responsibility, and the Receiver shall assume no responsibility, for preparing and filing her personal income tax returns.

47.     Upon further Order of this Court, pursuant to such procedures as may be required by this Court and additional authority such as 28 U.S.C. §§ 2001 and 2004, the Receiver will be authorized to sell, and transfer clear title to, all real property in the Receivership Estate.

48.     The Receiver is authorized to take all actions to manage, maintain, and/or wind-down business operations of the Receivership Parties, including making legally required payments to pre-appointment creditors, employees, and agents of the Receivership Estate and communicating with vendors, investors, governmental and regulatory authorities, and others, as appropriate.  Any debts or amounts owed by Receivership Parties that pre-date this Order, including for services rendered before that date, shall not be paid absent order of the Court.  The Receiver will consult with the SEC and recommend a claims procedure to the Court at the

appropriate time, and stake holders will have an opportunity to comment on the proposed claims procedure.

49.     The Receiver shall take all necessary steps to enable the Receivership Funds to obtain and maintain the status of a taxable "Settlement Fund," within the meaning of Section 468B of the Internal Revenue Code and of the regulations, when applicable.  The Receiver shall file tax returns in accordance with regulations applicable to any such "Settlement Fund" status.

## X.        Investigate and Prosecute Claims

50.     Subject to the requirement, in Section VII above, that leave of this Court is required to resume or commence litigation, the Receiver is authorized, empowered and directed to investigate, prosecute, defend, intervene in or otherwise participate in, compromise, and/or adjust actions in any state, federal or foreign court or proceeding of any kind as may in his discretion, and in consultation with SEC counsel, be advisable or proper to recover, conserve and/or maximize Receivership Assets.

51.     Subject to the obligation to expend Receivership Assets in a reasonable and cost-effective manner, the Receiver is authorized, empowered and directed to investigate the manner in which the financial and business affairs of the Receivership Parties were conducted and (after obtaining leave of this Court) to institute such actions and legal proceedings, for the benefit of and on behalf of the Receivership Estate, as the Receiver deems necessary and appropriate; the Receiver may seek, among other legal and equitable relief, the imposition of constructive trusts, disgorgement of profits, asset turnover, avoidance of fraudulent transfers, rescission and restitution, collection of debts, and such other relief from this Court as may be necessary to enforce this Order.  The Receiver should provide prior notice to Counsel for the Commission before commencing investigations and/or actions.  Nothing in this paragraph shall be read to

require the Receiver to waive any applicable legal privilege, such as the attorney-client privilege, or work product protection.

52.     The Receiver hereby holds, and is therefore empowered to waive, all privileges, including the attorney-client privilege, held by all Receivership Parties, but not any personal privilege held by Smith.

53.     The Receiver has a continuing duty to ensure that there are no conflicts of interest between the Receiver, the Retained Personnel (as that term is defined below), and the Receivership Estate.

## XI.        Bankruptcy Filing

54.     The Receiver may seek an Order of this Court authorizing the Receiver to file voluntary petitions for relief under Title 11 of the United States Code (the "Bankruptcy Code") for the Receivership Parties, or any of them.  If a Receivership Party is placed in bankruptcy proceedings, the Receiver may become, and may be empowered to operate each of the Receivership Estate as, a debtor in possession.  In such a situation, the Receiver shall have all of the powers and duties as provided a debtor in possession under the Bankruptcy Code to the exclusion of any other person or entity.  Pursuant to Paragraph 7 above, the Receiver is vested with management authority for all Receivership Parties and may therefore file and manage a Chapter 11 petition.

55.     The provisions of Section VIII above bar any person or entity, other than the Receiver, from placing any of the Receivership Parties in bankruptcy proceedings.

## XII.       Liability of Receiver

56.     Until further Order of this Court, the Receiver shall not be required to post bond or give an undertaking of any type in connection with his fiduciary obligations in this matter.

57.     Subject to other provisions of this Order, the Receiver may choose, engage and

employ attorneys, accountants, appraisers, and any other independent contractors and technical specialists, including, but not limited to, securities traders, registered representatives, financial or business advisers, liquidating agents, real estate agents, forensic experts, property managers, brokers, traders, and auctioneers (collectively, "Retained Personnel") as the Receiver deems advisable or necessary in the performance of the Receiver's duties and responsibilities under the authority granted by this Order. The Receiver and his Retained Personnel, acting within scope of such agency, are entitled to rely on all outstanding rules of law and Orders of this Court and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree. In no event shall the Receiver or Retained Personnel be liable to anyone for their good faith compliance with their duties and responsibilities as Receiver or Retained Personnel, including compliance with applicable law governing the collection of debt, nor shall the Receiver or Retained Personnel be liable to anyone for any actions taken or omitted by them except upon a finding by this Court that they acted or failed to act as a result of malfeasance, bad faith, gross negligence, or in reckless disregard of their duties.

58.     This Court shall retain exclusive jurisdiction over any action filed against the Receiver or Retained Personnel based upon acts or omissions alleged to have been committed in their representative capacities.

59.     In the event the Receiver decides to resign, the Receiver shall first give written notice to the SEC's counsel of record and the Court of its intention, and the resignation shall not be effective until the Court appoints a successor. The Receiver shall then follow such instructions as the Court may provide.

60.     The Receiver shall not be personally liable for any liabilities that have accrued or will accrue to the Receivership Estate or the Receivership Parties.

### XIII.   Insurance

61.     The Court recognizes that the Receiver accepts this appointment without time for

independent verification that appropriate insurance is in place on the property or that appropriate

liability or other insurance is in place to protect the Receivership Assets and the Receivership

Estate.  Accordingly, the Court acknowledges that the Receiver has no responsibility or liability

until such time as he can confirm that such insurance is in place or acquire the appropriate

insurance.  The Receiver shall make it a priority to verify or obtain insurance coverage

immediately upon this Order Appointing Receiver being entered; however, the SEC,

Receivership Parties, and Court acknowledge there may be a gap of time before such insurance

may be in place to properly protect the assets of the estate and any employees of the estate, and

that the Receiver has no responsibility or liability until such time as he/it has notified the Court

by filing a notice that insurance is in place.

62.     Defendants are ordered to immediately provide the Receiver with all available

insurance information for both existing and prior insurance policies. This includes all

applications, policies, riders, correspondence, endorsements, claims and other information.

Defendants are ordered: (1) to advise the insurance agent(s) of this Order in writing, (2)

designate all authority over the policies to the Receiver, and (3) take no action with regard to

terminating or modifying existing insurance policies.

63.     Any insurance broker, agent, carrier, or underwriter is specifically ordered by the

Court to cooperate with the Receiver by timely furnishing the following: (1) copies of all

insurance policies including any riders, endorsements and applications with respect to policies

related to the Receivership Estate, (2) loss history for five consecutive years or for as long as

insurance has been in force if less than five years, (3) premium payment history including current

status, and (4) any correspondence with insurance agents, brokers and companies.  Policies shall

be endorsed by the Defendants naming the Receiver as Named Insured and Loss Payee effective the date of this Order as appropriate to the type of coverage, and evidence of this policy endorsement shall be promptly supplied to the Receiver.

64.     Subject to other provisions of this Order, the Receiver is hereby authorized to engage insurance brokers and consultants as necessary to properly insure the Receivership Assets.

**XIV.     Recommendations and Reports**

65.     The Receiver is authorized, empowered, and directed to develop a plan for the fair, reasonable, and efficient preservation of assets during the pendency of this litigation (the "Preservation Plan").

66.     Within 60 days of the entry date of this Order the Receiver shall file the Preservation Plan in the above-captioned action, with service copies to counsel of record, to allow the Court to evaluate the Receiver's planned course of action for the preservation of assets.

67.     Within thirty (30) days after the end of each calendar quarter, the Receiver shall file and serve a full report and accounting of the Receivership Estate (the "Quarterly Status Report"), reflecting (to the best of the Receiver's knowledge as of the period covered by the report) the existence, value, and location of all Receivership Assets, and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Receivership Estate.

68.     The Quarterly Status Report shall contain the following:

A.     A summary of the operations of the Receiver;

B.     The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the

estate;

C.      A schedule of all the Receiver's receipts and disbursements (attached as

Exhibit A to the Quarterly Status Report), with one column for the

quarterly period covered and a second column for the entire duration of

the receivership;

D.      A description of all known Receivership Assets, including approximate or

actual valuations, anticipated or proposed dispositions, and reasons for

retaining assets where no disposition is intended;

E.      A description of liquidated and unliquidated claims held by the

Receivership Estate, including the need for forensic and/or investigatory

resources; approximate valuations of claims; and anticipated or proposed

methods of enforcing such claims (including likelihood of success in: (i)

reducing the claims to judgment; and, (ii) collecting such judgments);

F.      A list of all known creditors with their addresses and the amounts of their

claims;

G.      The status of Creditor Claims Proceedings, after such proceedings have

been commenced; and,

H.      The Receiver's recommendations for a continuation or discontinuation of

the receivership and the reasons for the recommendations.

69.     On the request of the SEC, the Receiver shall provide the SEC with any

documentation that the SEC deems necessary to meet its reporting requirements, that is

mandated by statute or Congress, or that is otherwise necessary to further the SEC's mission.

28

## XV.      Fees, Expenses, and Accountings

70.      Subject to Paragraphs 69 to 83 immediately below, the Receiver need not obtain Court approval prior to the disbursement of Receivership Funds for expenses in the ordinary course of the administration and operation of the receivership.  Further, prior Court approval is not required for payments of applicable federal, state, or local taxes.

71.      The Receiver is authorized to solicit persons and entities ("Retained Personnel") to assist him in carrying out the duties and responsibilities described in this Order and need not obtain prior Court approval if the reasonably expected cost is less than $10,000 in a calendar year.  If the cost is expected to exceed $10,000, the Receiver shall not engage any Retained Personnel without first obtaining an Order of the Court authorizing such engagement.  As set forth below in Paragraphs 77 to 83, the Court approves the Receiver's retention of Conrad O'Brien as counsel and Alvarez & Marsal Disputes and Investigations, LLC ("Alvarez") as accountant to assist the Receiver in this matter.

72.      The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estate as described in the "Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission" (the "Billing Instructions") agreed to by the Receiver, Conrad O'Brien, and Alvarez.  Such compensation shall require the prior approval of the Court.

73.      Within forty-five (45) days after the end of each calendar quarter, the Receiver and Retained Personnel shall apply to the Court for compensation and expense reimbursement from the Receivership Estates (the "Interim Fee Applications").  At least thirty (30) days prior to filing each Interim Fee Application with the Court, the Receiver will serve upon counsel for the SEC a complete copy of the proposed Application, together with all exhibits and relevant billing information in a format to be provided by SEC staff.  To the extent the Receiver's Fee Applications may be

29

supported by exhibits that include invoices from the Receiver's counsel and accountant, the Receiver is authorized by this Order to separately file such exhibits under seal.

74.     All Interim Fee Applications will be interim and will be subject to cost benefit and final reviews at the close of the receivership.  At the close of the receivership, the Receiver will file a final fee application, describing in detail the costs and benefits associated with all litigation and other actions pursued by the Receiver during the course of the receivership.

75.     Interim Fee Applications will be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court.  The total amounts held back during the course of the receivership will be paid out at the discretion of the Court as part of the final fee application submitted at the close of the receivership.

76.     Each Interim Fee Application shall:

A.     Comply with the terms of the Billing Instructions agreed to by the Receiver; and,

B.     Contain representations (in addition to the Certification required by the Billing Instructions) that: (i) the fees and expenses included therein were incurred in the best interests of the Receivership Estate; and, (ii) with the exception of the Billing Instructions, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

77.     At the close of the Receivership, the Receiver shall submit a Final Accounting, in a format to be provided by SEC staff, as well as the Receiver's final application for compensation and expense reimbursement.

78. All such fees and expenses of the Receiver, including all amounts due to the Receiver or his counsel, shall be accorded priority to the maximum extent provided by applicable law.

79. The Court approves the following hourly rates for work performed in connection with the Receivership by the Receiver and others at Conrad O'Brien at his direction according to the following schedule:

**Receiver and Counsel Fees**:

| | |
|---|---|
| Receiver | $510 |
| Andrew Gallinaro, Partner | $365 |
| Associate | $240 - $330 |
| Paraprofessional | $165 |

80. The Court finds that these rates are reasonable for the experience of the individuals performing the work and in light of the complexity of the work performed and are consistent with the rates charged for similarly complex work done by other, similarly experienced professionals in this geographic region.

81. Receiver's and counsel's fees for professional services and expenses will be reported to the Court and SEC with a 20% holdback.

82. The Court approves the Receiver's use of Alvarez as accountant to the Receiver in this matter. The Court approves the following hourly rates for accounting work performed by Michael Shanahan and others at Alvarez at the Receiver's direction in this matter according to the following schedule:

**Accountant's Fees**:

| | |
|---|---|
| Michael Shanahan, Managing Director | $550 |
| Managing Director/Senior Director | $550 - $725 |
| Directors/Managers | $425 - $525 |
| Sr. Associates/Associates | $275 - $375 |

83.     The Court finds that these rates are reasonable for the experience of the individuals performing the work and in light of the complexity of the work performed and are consistent with the rates charged for similarly complex work done by other, similarly experienced professionals in this geographic region.  Notwithstanding the foregoing, the Receiver shall not utilize personnel of the accountant at a rate that exceeds Mr. Shanahan's listed rate without providing written notice of the Receiver's intent to do so to the SEC.

84.     Alvarez's fees for professional services and expenses will be reported to the Court and SEC with a 20% holdback.

85.     The Receiver, Conrad O'Brien, and Alvarez shall not petition the Court for any increase in these hourly rates prior to January 2022.

**IT IS FURTHER ORDERED THAT** this Order shall remain in effect unless and until modified by further Order of this Court, and that the Court shall retain exclusive jurisdiction of the within proceedings for all purposes.

**IT IS SO ORDERED, this** _29th_ **day of** __June_____, 2020.

_____
HONORABLE MADELINE COX ARLEO
UNITED STATES DISTRICT JUDGE